IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| **marchFIRST, INC.,** *et al.,* | ) | Case No. 01-24742 |
| | ) | (Substantively Consolidated) |
| Debtors. | ) | |
| | ) | Honorable A. Benjamin Goldgar |
| | ) | |
| | ) | Hearing Date: July 14, 2010 |
| | ) | Hearing Time: 10:30 a.m. |

### TRUSTEE'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT ON THE "AMENDED" ADMINISTRATIVE EXPENSE CLAIMS FILED BY CIT COMMUNICATIONS FINANCE CORPORATION

Andrew J. Maxwell, not individually, but solely as chapter 7 trustee ("Maxwell") in the above-referenced, jointly administered bankruptcy cases, hereby files this memorandum in further support of his Motion for Summary Judgment (the "Motion") on the "Amended" Requests for Allowance and Payment of Administrative Expenses (hereinafter, the "Equipment Value Claims") filed by CIT Communications Finance Corporation ("CIT"). As set forth in greater detail below, the Trustee is entitled, based on principles of *res judicata*, to judgment in his favor, disallowing the Equipment Value Claims and denying CIT's Motion to Compel Payment (the "Motion to Compel") with respect to those Claims. The Equipment Value Claims must also be stricken and disallowed as untimely.

### Introduction

CIT claims that it never recovered certain equipment it had leased, prepetition, to the Debtors (the "Missing Equipment"). It chose, however, to pursue its claim for the value of the allegedly missing equipment (the "Claimed Missing Equipment Value") in two separate proceedings – the Equipment Value Claims and a separate, stand-alone adversary proceeding (the "Adversary"). The Equipment Value Claims were filed late to begin with, and, apparently

for that reason, were styled as "Amendments" to certain previously-filed requests for administrative expenses related to post-petition rents. The Adversary was filed still later. In fact, the Adversary was filed well after the statute of limitations had run on the counts asserted in it, and the Bankruptcy Court dismissed the Adversary in its entirety for that reason. The Bankruptcy Court found, among other things, that CIT was initially placed on notice of its alleged injury shortly after a July 2001 demand it made for the Equipment, and that CIT received further confirmation of a potential claim soon afterward. The District Court and Seventh Circuit Court of Appeals both affirmed the dismissal.

Under the doctrines of *res judicata*, therefore, CIT's Equipment Value Claims are barred by the prior, final adjudication of the same claims in the context of the Adversary. Consequently, the Trustee is entitled to summary judgment on, and disallowance of, the Equipment Value Claims and an Order denying CIT's Motion to Compel to the extent it relates to those Claims. CIT's method of prosecuting its claims for the Missing Equipment or its value admittedly was unconventional, but it was a method entirely of CIT's own design, and CIT must bear the consequences of its strategy. Indeed, CIT persisted in pursuing simultaneously its Equipment Value Claims and the Adversary over the Trustee's express objection that the Adversary counts asserted against the estate were duplicative of the Equipment Value Claims. CIT thus cannot complain that it did not foresee that final adjudication of one would bar the other.

In addition to the *res judicata* bar, CIT's Equipment Value Claims must be stricken as not timely filed. They were filed more than a year after the Administrative Bar Date, without leave of Court, and thus should be stricken and disallowed in their entirety.

\11234962.5

## Summary of the Facts[1]

The Debtors, including marchFIRST, Inc. ("M1"), Mitchell Madison Group LLC ("Mitchell"), CKS Group, Inc. ("CKS") and certain affiliates (collectively, "Debtors") sought bankruptcy protection in the District of Delaware on April 12, 2001 (the "Petition Date"). St. Facts, ¶ 1. The Debtors' bankruptcy cases, though filed under chapter 11 of the U.S. Bankruptcy Code (11 U.S.C. §§ 101, et seq. (hereinafter, the "Code")), were converted to cases under chapter 7 on or about April 25, 2001 ("Conversion Date"), just two weeks after the Petition Date. St. Facts, ¶¶ 1, 2. Michael Joseph ("Joseph") was appointed interim trustee. St. Facts, ¶ 3. Venue of the bankruptcy cases was transferred (on or about July 10, 2001) to this Court, and Maxwell was appointed successor trustee on or about July 16, 2001. St. Facts, ¶¶ 3-7.

CIT was in the business of leasing telecommunications equipment. St. Facts, ¶¶ 8, 12. At various times prior to the Petition Date, CIT leased certain equipment (collectively, the "Equipment") to Debtors M1, Mitchell and CKS and to an entity known as Cybernautics, Inc. under a total of five leases (collectively, the "Leases").[2] St. Facts, ¶¶ 12-15. CIT appeared in the Bankruptcy Case, through its counsel, on or about April 23, 2001. St. Facts, ¶ 9.

The Trustee did not assume the CIT Leases. St. Facts, ¶ 16. Accordingly, pursuant to Section 365(d)(1) of the Code, the Leases were rejected by operation of law on or about June 26, 2001 – 60 days after the Conversion Date and approximately three weeks *before* Maxwell was appointed Trustee. St. Facts, ¶¶ 7, 16, 34; 11 U.S.C. § 365(d)(1); and see 11 U.S.C. § 348(a) ("[c]onversion of a case … constitutes an order for relief under the chapter to which the case is converted"). The Bankruptcy Court set a claims bar date of October 11, 2001 ("Claims Bar

---

[1] In accordance with this Court's Local Rule 7056-1(A), the Trustee is filing herewith a Statement of Uncontested Facts and supporting materials. Factual assertions herein are to the Trustee's Statement of Uncontested Facts and are designated "St. Facts, ¶ __."

[2] See St. Facts, ¶ 15. The Trustee does not dispute that the Debtors acquired the CIT lease to Cybernautics or otherwise succeeded to Cybernautics' rights under it.

Date") for claims arising from rejected contracts and leases. St. Facts, ¶ 19. In addition, on the Trustee's "Motion Setting Bar Date for Filing Administrative Claims Relating to Rejected Executory Contracts and Unexpired Leases", this Court set October 11, 2001 ("Administrative Bar Date") as the last day on which lessors under Rejected Leases who held administrative expense claims could file requests for those expenses (or be forever barred from asserting them). St. Facts, ¶¶ 17-18.

On or before the Claims Bar Date, CIT filed two proofs of claim ("Prepetition Claims").[3] St. Facts, ¶ 20, And on or before the Administrative Bar Date, CIT filed two requests for allowance of administrative expenses ("Original Administrative Claims") – one against Debtor Mitchell and the other against Debtor M1 – for Debtors' alleged post-petition use of the Equipment.[4] St. Facts, ¶¶ 20, 23.

Subsequently, on December 10, 2002, long after the Administrative Bar Date had passed and without obtaining leave of Court to do so, CIT filed two "Amended" Requests for Allowance and Payment of Administrative Expenses – one against Mitchell in the amount of $1,181,988.53 and one against M-1 in the amount of $1,293,767.46 (collectively, the "Equipment Value Claims"). St. Facts, ¶¶ 27-29. CIT alleged in the Equipment Value Claims that the Trustee had, pursuant to § 704 of the Code, a fiduciary duty "to gather, administer and turnover property of the estate" and breached his duty by allegedly failing to turn over to CIT certain of its

---

[3]  CIT's Prepetition Claims seek recovery under the Leases of some $6 million in "past due amounts," certain "remaining contract balances" and "equipment residual" values. St. Facts, ¶¶ 20, 21. The Trustee has filed objections to the Prepetition Claims (St. Facts, ¶ 43), but those objections are not the subject of this pending Motion.

[4]  In the Original Administrative Claims, CIT sought (collectively) $461,957.93 for rent and other charges allegedly arising under three of the Leases from the Petition Date through October 1, 2001. St. Facts, ¶¶ 23-25. The Trustee objected to CIT's Original Administrative Claims (St. Facts, ¶ 26), but those objections are not a subject of the pending Motion.

4

\11234962.5

Equipment.[5] St. Facts, ¶ 29. Through its Equipment Value Claims, CIT sought recovery of administrative expenses of $2,475,755.99, as alleged damages equal to the value of the purportedly "converted" Equipment. St. Facts, ¶¶ 29-30. CIT claimed in its Equipment Value Claims that it discovered the Trustee's alleged breach of duty only after the Administrative Bar Date. St. Facts, ¶ 30. The Trustee promptly objected to the Equipment Value Claims on a number of grounds, including that they were not timely filed. St. Facts, ¶ 31.

In or about May 2007, notwithstanding the facts that its Equipment Value Claims were pending, that CIT had not filed or presented any motion requesting payment of those Claims, and that there had been no substantive hearings or rulings on them, CIT filed its Adversary against Trustee Maxwell, both personally and in his capacity as Chapter 7 Trustee of the Debtors' estates, alleging that CIT had not recovered all of its Equipment (the "Missing Equipment"). St. Facts, ¶¶ 32, 34, 39. Like the Equipment Value Claims, the complaint in the Adversary ("Complaint") alleged that the Trustee breached fiduciary duties imposed on him by § 704 of the Code. St. Facts, ¶ 33. The value of the Missing Equipment alleged in the Adversary and sought as damages, however ($3.6 million), was even greater than the Claimed Missing Equipment Value asserted in the Equipment Value Claims ($2.476 million). St. Facts, ¶¶ 28, 34. Specifically, CIT sought in its Complaint to recover $3.6 million plus lost income on each of the following causes of action: a claim against Maxwell, personally, for breach of fiduciary duty (Count I); a claim against Maxwell, personally, for *ultra vires* activities (Count III); a claim against Maxwell in his capacity as Chapter 7 Trustee for breach of fiduciary duty (Count II); and

---

[5] The Trustee disputes those allegations, and nothing herein is intended as a concession that the Trustees or their agents engaged in any actionable conduct or misconduct.

\11234962.5

a claim against Maxwell in his capacity as Chapter 7 Trustee for constructive bailment (Count IV).[6] St. Facts, ¶ 34.

The Trustee filed a motion to dismiss the Adversary ("Motion to Dismiss") and a supporting memorandum, asserting, among other things, that all of the counts were barred by the statute of limitations and that Counts II and IV, as claims against the bankruptcy estate, should be stricken as duplicative of the Equipment Value Claims. St. Facts, ¶ 35. In or about November of 2007, the Bankruptcy Court granted the Trustee's Motion to Dismiss and dismissed the Adversary in its entirety, finding that it was barred by the Illinois five-year statute of limitations. St. Facts, ¶ 36. The Bankruptcy Court also found that CIT knew or should have known that it had a dispute with the Trustee on the occurrence of several events, including within a few weeks after its July 20, 2001 written communication to the Trustee seeking return of its Equipment. St. Facts, ¶ 37. The Court issued a Memorandum Opinion and Order dismissing the Adversary (collectively, the "Bankruptcy Court Judgment"). St. Facts, ¶ 36. CIT then filed an appeal of the Bankruptcy Court Judgment to the U.S. District Court. St. Facts, ¶ 38.

In June, 2008, while its appeal was pending, CIT filed with the Bankruptcy Court a Motion to Compel Payment of its Administrative Claims ("Motion to Compel").[7] St. Facts, ¶ 39. In September 2008, the U.S. District Court affirmed the Bankruptcy Court's ruling on the Adversary, finding, *inter alia,* as had the Bankruptcy Court, that CIT was on notice of an alleged wrongfully caused injury "shortly after July 20, 2001," when its Equipment was not returned on request. St. Facts, ¶ 40. CIT appealed to the U.S. Court of Appeals for the Seventh Circuit ("Seventh Circuit"). St. Facts, ¶¶ 40-41.

---

[6] CIT acknowledged in the Complaint that the Leases were rejected on or about June 26, 2001. St. Facts, ¶ 34.
[7] This Court has entered an order consolidating all of the Trustee's objections to CIT's Prepetition and Administrative Claims as well as CIT's Motion to Compel. St. Facts, ¶ 44.

6

\11234962.5

On or about December 21, 2009, the Seventh Circuit affirmed the District Court's ruling against CIT, finding that CIT knew of the alleged wrongful conduct during the summer and fall of 2001 (and at the latest, November 8, 2001), as established by CIT's own allegations. St. Facts, ¶¶ 41-42.

## Argument

### I.     SUMMARY JUDGMENT STANDARDS.

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-30 (1986) (holding that a non-moving party cannot defeat a motion for summary with evidence that is not significantly probative). Summary judgment is appropriate to resolve all or part of a claim. *See* Fed. R. Civ. P. 56(a); *and see* Fed. R. Civ. P. 56(d)(2) ("An interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages."). Moreover, summary judgment rules apply in adversary proceedings and contested matters. Fed. R. Bankr. P. 7056 and 9014(c), making Fed. R. Civ. P.56 applicable.

### II.    PRINCIPLES OF *RES JUDICATA* ENTITLE THE TRUSTEE TO JUDGMENT DISALLOWING CIT'S EQUIPMENT VALUE CLAIMS.

#### A.     The Elements and General Application of *Res Judicata*.

Where the final judgment giving rise to a *res judicata* claim or defense is rendered by a federal court, the claim preclusion effect of the judgment is determined by the federal courts. *Semtek International, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507 (2001).[8] Claim

---

[8]     The U.S. Supreme Court in *Semtek* concluded that the federal rule of claim preclusion with respect to judgments entered by federal courts in diversity cases, is to give the same claim-preclusive effect as would be applied under the law of the state in which the federal court sits,

7

\11234962.5

preclusion applies where there is (1) identity of claims; (2) identity of parties, including those in privity with them; and (3) a final judgment on the merits. *Ross v. Bd. Of Educ. Of Township High School Dist. 211,* 486 F.3d 279, 283 (7th Cir. 2007) (applying federal claim preclusion law); *People ex rel. Burris v. Progressive Land Developers, Inc.*, 602 N.E.2d 820, 825 (Ill. 1992) (holding, under Illinois law, that "the essential elements of *res judicata* are: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of cause of action; and (3) an identity of parties or their privies.").

"The Doctrine of *res judicata* (claim preclusion) requires litigants to join in a single suit all legal and remedial theories that concern a single transaction." *See, e.g., Perkins v. Board of Trustees of the University of Illinois,* 116 F.3d 235, 236 (7th Cir. 1997). "[A] final judgment forecloses 'successive litigation of the very same claim, *whether or not relitigation of the claim raises the same issues* as the earlier suit.'" *Taylor v. Sturgell,* 553 U.S. 880, 128 S.Ct. 2161, 2171 (2008) (emphasis added) (recognizing the broad scope of *res judicata*, but declining to apply it to a freedom of information act claimant who was not a party to the prior proceeding.).[9]

---

provided, however, that where "state law is incompatible with federal interests," federal courts need not adhere to state law. *Semtek International, Inc. v. Lockheed Martin Corp., 531 U.S. at 508.* Although this matter is not a diversity case, the claims asserted in the Adversary and in the Equipment Value Claims – breach of fiduciary duty, conversion and constructive bailment – are claims to which state common law typically applies. In fact, the Illinois statute of limitations was found applicable in the Adversary (*see* St. Facts, ¶ 35), suggesting that Illinois claim preclusion law may be applicable as well. *See, e.g., In re Fowler*, 395 B.R. 647, 651 (Bankr. W.D. Ark. 2008) (noting that "some commentators and cases maintain that the Erie doctrine applies whatever the ground for federal jurisdiction to any issue or claim which has its source in state law"). The source of the fiduciary obligations at issue, however, is the Code. St. Facts, ¶ 29, 33 (noting references to 11 U.S.C. § 704). The distinction is of no practical importance, however, because federal and Illinois law on preclusion issues are substantially consistent, and either would lead here to the same result. Authorities from both sources are cited in the remainder of this memorandum.

[9]    It is well-established that principles of *res judicata* bar not only all claims that were adjudicated in a prior action, but all claims which could have been adjudicated there. *Ross v. Bd. Of Educ. Of Township High School Dist. 211,* 486 F.3d at 283; *see also, Cole v. Board of*

8

\11234962.5

A final judgment on the merits thus bars further claims by parties or their privies based on the same cause of action. *Ross*, 486 F.3d at 283; *Progressive Land Developers, Inc.*, 602 N.E.2d at 825 (holding that a final judgment on the merits is conclusive as to the rights of the parties and their privies and acts as an absolute bar to subsequent actions involving the same claims).

Moreover, the order in which the two actions are filed is irrelevant, because "[w]hen the cases proceed in parallel, the first to reach judgment controls the other." *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832, 838 (7th Cir. 1999) (declining to apply *res judicata* where neither of two parallel actions under the Fair Debt Collection Practices Act had yet reached final judgment).[10] Furthermore, the rules of *res judicata* typically apply to decisions made by bankruptcy courts, and, consequently, "a creditor who offers a proof of claim and demands its allowance is bound by what is judicially determined, ... and if his claim is rejected, ... its validity may not be relitigated in another proceeding on the claim." *Katchen v. Landy*, 382 U.S. 323, 334 (1966) (internal citations omitted). Thus, in *Lang v. Anderburg-Lund Printing Co. (In re Anderburg-Lund Printing Co.)*, 109 F.3d 1343 (8th Cir. 1997), an administrative expense claim was barred where the bankruptcy court had dismissed the same claim with prejudice in an adversary proceeding after the claimant had asserted it as a cross-claim.

---

*Trustees of the University of Illinois*, 497 F.3d at 773 ("*res judicata* ... precludes all issues that could have been raised"); *People ex rel. Burris v. Progressive Land Developers, Inc.*, 602 N.E.2d at 825 ("[t]he doctrine extends not only to what actually was decided ... but also to matters which could have been decided ... ."). Therefore, claims that arise out of the same transaction, "whether or not they were actually raised in the earlier lawsuit . . . may not be asserted in the second or subsequent proceeding." *Ross v. Bd. Of Educ. Of Township High School Dist. 211*, 486 F.3d at 283.

[10]  See also, *Moore's Federal Practice 3d*, § 131.31[2] ("A case filed at the same time or even later than another case may still be the basis for preclusion. Two cases may proceed simultaneously towards judgment, with the case first reaching final judgment becoming the basis for precluding the other case"), *citing*, Restatement (Second) of Judgments, § 14 (1982) ("[f]or purposes of *res judicata*, the effective date of a final judgment is the date of its rendition, without regard to the date of commencement of the action in which it is rendered or the action in which it is to be given effect").

9

\11234962.5

As demonstrated below, all of the elements of *res judicata* are satisfied, and CIT's Equipment Value Claims thus are barred.

B.  **Application of the Principles of *Res Judicata* Compel Entry of Judgment for the Trustee, Disallowance of CIT's Equipment Value Claims, and Denial of CIT's Motion to Compel With Respect to Those Claims.**

The first requirement for application of *res judicata* – identity of claims or causes of action – is easily satisfied here. Claims are the same for *res judicata* purposes, if they "'emerge[] from the same core of operative facts ... .'" *Cole v. Board of Trustees of the University of Illinois,* 497 F.3d 770, 774 (7th Cir. 2007), *quoting Highway J Citizens Group v. United States Dept. of Transp.,* 456 F.3d 734, 741 (7th Cir. 2006); *River Park, Inc. v. City of Highland Park,* 703 N.E.2d 883, 893 (Ill. 1998) ("separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief."). Claims are thus the same "'if they are based on the same, or nearly the same, factual allegations.'" *Cole v. Board of Trustees of the University of Illinois,* 497 F.3d at 772-73, *quoting, Herrmann v. Cencom Cable Assocs., Inc.,* 999 F.2d 223, 226 (7th Cir. 1993); *Ross v. Bd. Of Educ. Of Township High School Dist. 211,* 486 F.3d at 283 (same principle).[11]

---

[11] In *Cole,* for example, the Seventh Circuit held, notwithstanding the distinct legal theories, that a plaintiff's False Claims Act and whistleblower claims arose out of "the same 'events,' 'factual nebula,' or 'event cluster'" as did her earlier-filed Title VII claims for racial harassment. *Cole v. Board of Trustees of the University of Illinois,* 497 F.3d 770, 774. Similarly, in *Bethesda Lutheran Homes and Services, Inc. v. Born,* 238 F.3d 853, 857 (7th Cir. 2001), the Seventh Circuit applied *res judicata* and other estoppel theories to bar a second Medicaid benefits suit where plaintiffs asserted arguments inconsistent with those in the prior suit. The Court stated that "for purposes of *res judicata* a claim is not an argument or a ground but the events claimed to give rise to a right to a legal remedy." *Id. See also People ex rel. Burris v. Progressive Land Developers, Inc.,* 602 N.E. 2d at 825, finding that a ruling in a probate proceeding barred a later unjust enrichment suit, noting that "[w]hile one group of facts may give rise to a number of different theories of recovery, there remains only a single cause of action.").

10

\11234962.5

Here, the claims in issue plainly arise from the same core group of operative facts. Both the Equipment Value Claims (and the Motion to Compel with respect to them) and the Adversary seek recovery for the value of the allegedly Missing Equipment and assert that CIT's failure to recover the Equipment was the result of the Trustee's alleged misconduct, including alleged breaches of the fiduciary duties imposed by 11 U.S.C. § 704. St. Facts, ¶¶ 29, 30, 33, 34. The allegedly actionable post-petition conduct of the Trustee and his agents with respect to the Missing Equipment thus is directly at issue in and, in fact, the gravamen of both claims. The fact that the Complaint included a constructive bailment count, a legal theory similar to, but technically distinct from the "conversion" theory asserted in the Equipment Value Claims, does not alter the result. As established by the authorities cited above, the assertion of a new or different legal theory cannot overcome the identity of claims element where, as here, both causes rely upon the same alleged conduct and operative facts.

The second element, identity of parties, is also readily satisfied, because a claim against a trustee in bankruptcy in his official capacity is a claim against the bankruptcy estate. *Schechter v. State of Ill. Dept. of Revenue (In re Markos Gurnee P'ship.)*, 182 B.R. 211, 215 (Bankr. N.D. Ill. 1995) (implicitly overruled on other grounds) ("[T]he estate can sue or be sued, but only in the name of the trustee. Such an action involves only the trustee's 'official capacity,' so that the estate, rather than the trustee personally, is liable."); *see also In re Weisser Eyecare, Inc.*, 245 B.R. 844, 848 (Bankr. N.D. Ill. 2000) (recognizing that a claim against a bankruptcy trustee in his official capacity will be recovered from the bankruptcy estate); *Quesada v. Banco Bilbao Vizcaya—P.R. (In re Elac Food Corp.)*, 226 B.R. 320, 323 (D.P.R. 1998) ("While a trustee may be held personally liable for breaches of his fiduciary duties, when a trustee is sued in his 'official capacity' it is really a suit against the estate."). Thus, just as the Trustee pointed out in

his Motion to Dismiss (St. Facts, ¶ 35), CIT and the Debtors' bankruptcy estate were parties to both the Equipment Value Claims and the Adversary. Indeed, both claims were claims by CIT for recovery of the value of the Missing Equipment from or against the estate.

The third element, whether there has been a final judgment on the merits, is also unquestionably satisfied by the Bankruptcy Court Judgment.[12] A case dismissed on statute of limitations grounds is a final judgment on the merits for *res judicata* purposes. *See, e.g., Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 228 (1995) ("The rules of finality ... treat a dismissal on statute-of-limitations grounds the same way they treat a dismissal for failure to state a claim ... or for failure to prosecute: as a judgment on the merits"); *Am. Nat. Bank & Trust v. City of Chicago*, 826 F.2d 1547, 1553 (7th Cir. 1987); *Smith v. City of Chicago*, 820 F.2d 916, 918-19 (7th Cir. 1987) (holding that dismissals based on a statute of limitations are decisions "on the merits" and bar any other claim brought in the same system of courts. In fact, in *American National Bank & Trust*, the Seventh Circuit noted expressly that "[a] decision may be 'on the merits' for purposes of preclusion *even though the court did not resolve the merits.*" *Am. Nat. Bank & Trust v. City of Chicago*, 826 F.2d at 1553 (emphasis added). When a suit "is dismissed under a statute of limitations, *that is the end.*" *Id.* (emphasis added); *cf., DeLuna v. Treister*, 708 N.E. 2d 340, 345 (Ill. 1999) (under Illinois rules of dismissal, a court need not have actually reached the merits to give rise to a ruling deemed a final judgment on the merits; many provisions, including statutes of limitation, restrict access to the courts).

---

[12] This Court may take judicial notice of the Bankruptcy Court Judgment and of the decisions of the District Court and Seventh Circuit affirming it. *See, e.g., Mandarino v. Pollard*, 718 F.2d 845, 849 (7th Cir. 1983) (taking judicial notice of a judgment issued by a state court); *Iovinelli v. Pritchett*, 2008 U.S. Dist. LEXIS 52617 (N.D. Ill., July 9, 2008) at *8 ("[T]his Court can ... take judicial notice of the decisions of federal and state courts").

\11234962.5

In *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, the Supreme Court analyzed directly the claim preclusive effect of a U.S. District Court's dismissal of a state-law-based claim on statute of limitations grounds. In particular, the Court reviewed the language of Rule 41(b) of the Federal Rules of Civil Procedure describing the effect of an involuntary dismissal and noted that, unless one of three exceptions applies or the court "otherwise specifies," such a dismissal is, under the rule, by default, "upon the merits." *Id.* 531 U.S. at 502-03. The Court further concluded that although the dismissal before it, based on limitations grounds, fell within that default "adjudication upon the merits" category of the rule, that fact did not necessarily entitle the judgment to claim-preclusive effect in all courts. *Id.*, 531 U.S. at 502-03. It did, however, entitle the judgment to claim preclusive effect in the system of courts *issuing* the judgment. Specifically, "unlike a dismissal without prejudice, the dismissal [on limitations grounds] in the present case *barred refiling of the same claim in the United States District Court for the Central District of California.*" *Semtek*, 531 U.S. at 506 (emphasis added); *see also, Smith v. City of Chicago*, 820 F.2d 916, 918 (7th Cir. 1987) ("'Dismissals based on ... the running of a statute of limitations preclude a second action based on the same claim brought in the same system of courts'").

Federal Rule 41(b) applies in adversary proceedings and contested matters. See Fed. R. Bankr. P. 7041, 9014(c); Fed. R. Civ. P. 41(b). Moreover, the Bankruptcy Court Judgment here, just like the judgment in *Semtek*, did not fall into any exception set forth in Rule 41(b) and thus, by default, was an "adjudication upon the merits" under that Rule. Fed. R. Civ. P. 41(b). Consequently, just like the dismissal at issue in *Semtek*, the Bankruptcy Court Judgment here barred pursuit of the same claim in this system of federal Courts – the Courts that entered the

\11234962.5

Bankruptcy Court Judgment and those that affirmed it. Thus, the *Semtek* decision compels a ruling in the Trustee's favor barring the Equipment Value Claims.

The result is the same under Illinois law, which gives preclusive effect to a dismissal on statute of limitations grounds and strongly prohibits claim-splitting. *See, e.g., Rein v. David A. Noyes & Co.*, 665 N.E. 2d 1199, 1204-05 (Ill. 1996). In *Rein*, the Illinois Supreme Court held that a trial judge's grant of a motion to dismiss certain counts based on the statute of limitations, was a final adjudication such that, after the plaintiff (apparently for strategic reasons) voluntarily dismissed his remaining counts and pursued and lost an appeal of the statute of limitations judgment, the entire claim was barred. *Rein v. David A. Noyes & Co.*, 665 N.E. 2d at 1204-05 (holding that, due to the plaintiff's (ill-advised) voluntary dismissal of its remaining counts, even those counts, which the court had not dismissed, were barred from being refiled). The *Rein* Court explained that *res judicata* principles "prevent[] a litigant from splitting a single cause of action into more than one proceeding." *Rein v. David A. Noyes & Co.*, 665 N.E. 2d at 1207. *See also Crop-Maker Soil Services, Inc. v. Fairmount State Bank*, 881 F.2d 436, 438 (7th Cir. 1989) (holding the claim of a plaintiff/creditor barred by a final ruling in a bankruptcy-related proceeding in which plaintiff had chosen not to participate, finding that the plaintiff was precluded from splitting its claim).

In very recent cases, *Hudson v. City of Chicago*, 889 N.E.2d 210, 217 (Ill. 2008), and *Matejczyk v. City of Chicago,*, 922 N.E.2d 24, 32 (Ill. App. 2009), the Illinois Supreme and Appellate Courts, respectively, discussed the *Rein* decision with approval and relied upon it. In *Hudson,* after one count of a complaint was dismissed on immunity grounds, the plaintiff voluntarily dismissed his remaining claims and refiled them a year later in a new case. *Hudson,* 889 N.E.2d at 212. In holding that *res judicata* barred the re-filed claims, the court rejected the

14

\11234962.5

appellant's objection that there had been no true adjudication on the merits of the claims. *Hudson v. City of Chicago*, 889 N.E. 2d at 212, 219-223. Specifically invoking the policy against claim-splitting, the Court said that, "just like the plaintiffs in *Rein*, [plaintiffs] did have the *opportunity* to litigate" the merits of their claims, but chose to employ a course of action that triggered *res judicata's* bar. *Hudson v. City of Chicago*, 889 N.E. 2d at 216, 218-19 (emphasis added). In *Matejczyk*, as in *Rein*, the Court afforded a dismissal on statute of limitations grounds *res judicata* effect (*Matejczyk v. City of Chicago*, 922 N.E.2d 24, 26-27), [13] holding that "[t]o allow the splitting of claims or causes of action ... is contrary to the policy consideration central to *res judicata* of promoting finality." *Id.*, at 32.

An earlier Illinois Supreme Court case is particularly instructive. In *DeLuna v. Treister*, 708 N.E. 2d 340, the Illinois Supreme Court analyzed Illinois Supreme Court Rule 273, which governs the effect of involuntary dismissals and thus is analogous to Fed. R. Civ. P. 41(b).[14] The Court held that an actual airing of the merits is not a prerequisite to the application of *res judicata*, stating that "[t]he courts and the legislature have never hesitated to truncate a litigant's 'day in court' where facts indicate that the merits need not, or as a matter of fairness should not, be reached. Consequently, some of the provisions in the Code of Civil Procedure restrict access to our courts, *such as statutes of limitation and repose* ... ." *DeLuna v. Treister*, 708 N.E. 2d at 345 (emphasis added). The *DeLuna* Court then held that "if a plaintiff's action is involuntarily

---

[13] One of the plaintiff's two counts was dismissed on statute of limitations grounds, and plaintiff (after initially repleading) voluntarily dismissed his remaining claim and later attempted to refile it as a new action. *Matejczyk v. City of Chicago*, 922 N.E.2d 24, 26-27 (Ill. App. 2009). The trial court dismissed the new action by giving *res judicata* effect to the (now final) dismissal on limitations grounds, and the Appellate Court affirmed. *Id.*, 922 N.E. 2d at 27-28, 35.

[14] Illinois Supreme Court Rule 237 provides as follows:
**Effect of Involuntary Dismissal.** Unless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits.

15

\11234962.5

dismissed for a reason not expressly excepted by the rule, and if plaintiff does not procure leave of court to refile the complaint, or if a statute does not guaranty that opportunity to the plaintiff, then the rule *deems* the dismissal a dismissal on the merits. That is the purpose of the rule."[15] *Id.* (Emphasis in original.)

These cases compel the entry of summary judgment against CIT here. CIT deliberately chose duplicative and unconventional means, apparently for strategic reasons, of seeking to recover the value of the allegedly Missing Equipment. Rather than pursue its pending (but late filed) Equipment Value Claims, CIT chose to split its claim by filing a second proceeding -- an independent Adversary against both the estate and Maxwell personally. It thus must be bound by the final result in the first proceeding to reach judgment – the Bankruptcy Court Judgment in the Adversary. CIT cannot claim unfair surprise or prejudice at this result. CIT designed its own

---

[15] The *DeLuna* Court specifically discussed one of its earlier decisions in which it had included in its analysis the observation that a dismissal on statute of limitations grounds does not actually meet or reach the merits of the claim -- *Leow v. A&B Freight Line, Inc.*, 676 N.E. 2d 1284 (Ill. 1997). *DeLuna v. Treister*, 708 N.E.2d at 347. The *Leow* Court had reversed the dismissal of a timely-filed original personal injury action against the owner of a semi-trailer (on *res judicata* grounds) where the sole basis for the bar was the dismissal in the same, pending case, of a later added count against the first defendant's employee, who successfully asserted the statute of limitations defense. *Leow v. A&B Freight Line, Inc.*, 676 N.E. 2d at 1284. The *Leow* Court concluded, not surprisingly, that it made no sense to allow the first, timely sued defendant to obtain a dismissal based on the plaintiff's delay in adding a second defendant who was not even a necessary party to the action. *Leow*, 676 N.E.2d at 1288. The *DeLuna* Court made clear that the *Leow* decision turned on the narrow set of circumstances where a party other than the one who had obtained the dismissal was seeking to benefit from it without ever having prepared to meet the merits of the claim against it and that the case did not in other situations alter the *res judicata* effect of the dismissal. *DeLuna v. Treister*, 708 N.E.2d at 347. The *DeLuna* Court thus held that "[w]here the party that procures an involuntary dismissal in a case is the same party that later asserts that the dismissal was a 'final adjudication on the merits,' then whether an adjudication on the merits actually occurred is determined by applying Rule 273 *according to its plain terms*." *DeLuna v. Treister*, 708 N.E.2d at 347 (emphasis added); *and see*, *Curtis v. Lofy*, 914 N.E.2d 248, 260 (Ill. App. 2009) (where judgment is entered in favor of one defendant on a defense personal to him, *res judicata* principles will not, solely on the basis of that judgment of dismissal, bar the plaintiff's suit against a second defendant who might be vicariously liable with the first). The holding in *Leow* thus has no application where, as here, one of the same defendants who obtained the original dismissal is asserting it as a bar.

\11234962.5

litigation strategy and persisted in pressing the Adversary and, in particular, Counts II and IV of the Adversary, even though the Trustee had promptly challenged them as claims directly against the estate and therefore duplicative of the Equipment Value Claims. St. Facts, ¶ 35.

The dismissal of the Adversary was a final adjudication of CIT's Equipment Value Claims against the estate, just as, in *Lang*, an adjudication of the adversary cross-claim constituted an adjudication of the underlying claim against the bankruptcy estate in that case. *Lang v. Anderburg-Lund Printing Co.* 109 F.3d 1343. The Bankruptcy Court Judgment is a ruling of a type that falls squarely in the default category of an "adjudication on the merits" under Rule 41(b) and which would fall within the same category under Illinois Supreme Court Rule 237. Fed. R. Cir. P. 41(b); Ill. Sup. Ct. Rule 237. Under both federal and state law, therefore, as established by the *Semtek, Rein, DeLuna* and *Hudson* decisions, above, that adjudication bars all further proceedings in this Court on the same claims. The Bankruptcy Court's Judgment here, moreover, was affirmed by the District Court and the Seventh Circuit (St. Facts, ¶¶ 40, 42), and cannot now be collaterally attacked.

All of the elements of *res judicata* have been satisfied. CIT's Equipment Value Claims thus are barred, and the Trustee is entitled to judgment in his favor disallowing them in their entirety and denying CIT's Motion to Compel to the extent it seeks payment on the Equipment Value Claims.

### III. THE EQUIPMENT VALUE CLAIMS WERE LATE-FILED AND MUST BE STRICKEN.

As demonstrated above, the Equipment Value Claims are barred under principles of *res judicata*. In addition, however, they were filed more than one year after the Administrative Bar Date and must be stricken and disallowed for that reason as well.

\11234962.5

"An administrative bar date serves the same purpose as a claims bar date, which is 'finality and debtor rehabilitation.'" *In re PT-1 Communications, Inc.*, 386 B.R. 402, 409 (E.D.N.Y. 2007), *quoting* 9 *Collier on Bankruptcy P.*, 3003.03[4]. Permitting requests for administrative expenses to be filed at any time would render it impossible for a bankruptcy estate to determine its obligations with finality. *Id., at 409.* The Code, moreover, authorizes only the "timely" filing of requests for administrative expenses, with tardy filings subject to court authorization. 11 U.S.C. § 503(a). Specifically, 11 U.S.C. § 503(a) provides that "[a]n entity may timely file a request for payment of an administrative expense, or may tardily file such request *if permitted by the court for cause.*" *Id.* (emphasis supplied).

The Administrative Bar Date in this Bankruptcy Case was October 11, 2001 (St. Facts, ¶ 18), and CIT unquestionably had notice of the date. Indeed, it is uncontested that CIT appeared in the Bankruptcy Case, through counsel, just two weeks after the Petition Date and actually filed its Original Administrative Claims on or before the Administrative Bar Date. St Facts, ¶¶ 9, 23. The Administrative Bar Date was set by Court order, and that Order expressly provided that claims not filed by the date fixed would be "forever barred." St. Facts, ¶ 18. CIT filed its Equipment Value Claims more than a year after the Administrative Bar Date, and even more than a year after the very latest date on which (according to the Seventh Circuit's opinion) it could have become aware of its alleged injury. St. Facts, ¶¶ 18, 27-28, 43. The Trustee promptly objected to the Equipment Value Claims as untimely. St. Facts, ¶ 31. Yet CIT has never moved for or obtained leave to tardily file them.. St. Facts, ¶ 29. Consequently, the Equipment Value Claims should be stricken and disallowed.

## Conclusion

For all of the foregoing reasons, the Trustee is entitled to summary judgment in his favor with respect to CIT's Equipment Value Claims, and those Claims should be disallowed in their

18

\1 1234962.5

entirety. The Trustee is also entitled to an order denying CIT's Motion to Compel with respect to the Equipment Value Claims.

Dated: July 9, 2010                     **ANDREW J. MAXWELL**, not individually, but solely as chapter 7 Trustee


                                        By: /s/ Patricia K. Smoots
                                              One of his Attorneys


Richard J. Mason, P.C. (ARDC #01787659)
Patricia K. Smoots (ARDC #06194076)
Michael M. Schmahl (ARDC #06275860)
Paul J. Catanese (ARDC #06292530)
McGuireWoods LLP
77 W. Wacker Drive, Suite 4100
Chicago, IL 60601
(312) 849-8100

\11234962.5