IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| **marchFIRST, INC.,** *et al.,* | ) | Case No. 01-24742 |
| | ) | (Substantively Consolidated) |
| **Debtors.** | ) | |
| | ) | Honorable A. Benjamin Goldgar |
| | ) | |
| | ) | Hearing Date: July 14, 2010 |
| | ) | Hearing Time: 10:30 a.m. |

### TRUSTEE'S STATEMENT OF UNCONTESTED FACT IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT ON THE "AMENDED" ADMINISTRATIVE EXPENSE CLAIMS FILED BY CIT COMMUNICATIONS FINANCE CORPORATION

Pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure and this Court's Local Rule 7056-1(A), (B), Andrew J. Maxwell, not individually, but solely as chapter 7 trustee ("Trustee") of the above-referenced, jointly administered bankruptcy cases, hereby submits this Statement of Uncontested Fact in support of his Motion for Summary Judgment ("Motion") on the "Amended" Administrative Expense Claims Filed by CIT Communications Finance Corporation ("CIT")[1].

#### The Parties

1. On April 12, 2001 (the "Petition Date"), marchFIRST Inc. ("M1"), Mitchell Madison Group LLC ("Mitchell"), CKS Group, Inc. ("CKS") and certain of their affiliated entities filed voluntary petitions for protection under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware ("Delaware Bankruptcy Court"). Official Docket of the Delaware Bankruptcy Court for Case No. 01-01381 ("Delaware Docket"), Exhibit A hereto, at p. 1, Docket Entry No. 1. M1,

---

[1] CIT's "Amended Requests for Allowance and Payment of Administrative Expenses" are (hereinafter referred to as the "Equipment Value Claims").

Mitchell, CKS and their affiliated entities who filed for bankruptcy protection on the Petition Date are hereinafter referred to, collectively, as the "Debtors."

2.  On or about April 25, 2001 (the "Conversion Date"), the Debtors' bankruptcy cases were converted to cases under Chapter 7 of the Bankruptcy Code. *See* Order converting cases to Chapter 7, Delaware Dock. (Exh. A hereto), Dock. Entry No. 57.

3.  Michael Joseph ("Joseph") was appointed interim trustee for the Debtors' bankruptcy cases on or about April 26, 2001. *See* Deposition of Michael Joseph ("Joseph Dep."), Exhibit B hereto, at p. 45; *see also*, U.S. Trustee's appointment of interim trustee, Delaware Dock., Exh. A, p. 8, Dock. Entry No. 110.

4.  On or about April 30, 2001, the Delaware Bankruptcy Court ordered the joint administration of the Debtors' bankruptcy cases (hereafter, collectively, the "Bankruptcy Case"). *See* Order directing the procedural consolidation and joint administration of chapter 11 cases, Delaware Dock., Exh. A, p. 9, Dock Entry No. 71.

5.  The Delaware Bankruptcy Court entered an order on or about July 10, 2001 transferring venue of the Bankruptcy Case to the U.S. District Court for the Northern District of Illinois, and the Bankruptcy Case was thereafter administered by the U.S. Bankruptcy Court for the Northern District of Illinois (the "Illinois Bankruptcy Court"). *See* Memorandum Order transferring venue, see Delaware Dock., Exh. A, p. 46, Dock. Entry No. 390.

6.  The Bankruptcy Case was assigned Case No. 01-B-24742 by the Illinois Bankruptcy Court. *See* Bankruptcy Docket in the Illinois Bankruptcy Court for Case No. 01-B-24742 ("Illinois Docket").

7.  On or about July 16, 2001, Andrew Maxwell ("Maxwell") was appointed the successor chapter 7 trustee for the Debtors' Bankruptcy Case. See appointment letter from the

office of the U.S. Trustee, Illinois Docket, Docket Entry No. 3. (Unless otherwise indicated, references herein to the "Trustee" are to Joseph, Maxwell or both of them.)

8. CIT was previously known by or has previously used the names Newcourt Communications Finance Corporation, AT&T Credit Corporation, Lucent Technology Product Finance and Avaya Financial Services. CIT is in the business of leasing telecommunications equipment. Deposition of CIT's Rule 30(b)(6) designated witness, Jeremy Galton ("Galton Dep."), Exhibit D hereto, at pp. 9-10, 14, 19.

9. Counsel for CIT appeared in the Debtors' Bankruptcy Case on or about April 23, 2001. Notice of Appearance, Delaware Docket, Dock. No. 136, attached hereto as Exhibit X.

### Jurisdiction and Venue

10. This matter arises out of certain proofs of claim and requests for payment of administrative expense filed by CIT and out of the Trustee's objections to them. Accordingly, this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and (b) and 28 U.S.C. §1334(b). This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (B).

11. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### The Prepetition Leases

12. Prior to the Petition Date, CIT leased certain telecom equipment to Debtor Mitchell under a certain lease numbered E215810, which included schedules 10 through 40 and amendments thereto (collectively, "Lease E215810") and under a certain lease numbered W322655 and certain schedules thereto (collectively, "Lease W322655"). Galton Dep., Exhibit D, pp. 264-65, 267-68.

13. Prior to the Petition Date, CIT leased certain telecom equipment to Debtor CKS under a certain lease numbered W204904, and a series of schedules thereto (collectively, "Lease W204904"). Galton Dep., Exhibit D, pp. 265-66.

14. Prior to the Petition Date, CIT leased certain telecom equipment to M1 under a certain lease numbered X240470, and a series of schedules thereto (collectively, "Lease X240470"). Galton Dep., Exhibit D, p. 269.

15. Prior to the Petition Date, CIT also leased certain telecom equipment to an entity known as Cybernautics, Inc. ("Cybernautics") under a lease designated lease agreement W321627 ("Lease W321627").[2] Galton Dep., Exhibit D, pp. 266-67; and see lease agreement dated 1997, attached hereto as Exhibit E.

### Rejection of Leases and Fixing of Bar Dates

16. Leases E215810, W322655, W204904, X240470, and W321627 were not assumed or rejected by the Trustee or the Debtors prior to June 26, 2001, the date that is 60 days after the Conversion Date, and, consequently, were rejected by operation of law. Galton Dep., Exh. D, p. 432-33; and see, Order entered June 27, 2001 by the Delaware Bankruptcy Court (reflecting rejection of unexpired leases), Delaware Docket, Dock. No. 317.

17. On or about August 7, 2001, the Trustee filed a motion with the Illinois Bankruptcy Court requesting that the Court set October 11, 2001 as the bar date for the lessors of rejected personal and real property leases to file requests for payment of administrative expenses relating to those leases. *See* Trustee's Motion Setting Bar Date for Filing Administrative Claims Relating to Rejected Executory Contracts and Unexpired Leases ("Administrative Bar Date Motion"), attached hereto as Exhibit F.

18. On or about August 9, 2001, the Illinois Bankruptcy Court granted the Administrative Bar Date Motion and fixed October 11, 2001 as the last day on which lessors under a "Rejected Lease" holding an administrative expense claim must file a request for

---

[2] For purposes of this Motion, the Trustee does not dispute that one or more of the Debtors acquired Cybernautics rights under Lease W321627.

4

payment of administrative expense or be "forever barred" from asserting them (the "Administrative Bar Date"). Order Setting Bar Date for Filing Administrative Claims Relating to Rejected Executory Contracts and Unexpired Leases, attached hereto as Exhibit G.

19. Also on or about August 9, 2001, the Illinois Bankruptcy Court entered an order setting October 11, 2001 as the last day for holders of claims arising from the rejection of unexpired leases or executory contracts to file their claims ("Claims Bar Date"). August 9, 2001 Order Extending the Bar Date, attached hereto as Exhibit H.

### CIT's Prepetition and Administrative Claims

20. On or about October 10, 2001, CIT filed two proofs of claim. One claim, designated Claim No. 3823 ("Claim 3823"), filed against Debtor Mitchell and based on Leases W322655 and E215810, asserted a total claim of $1,437,024.03. The other, designated Claim No. 3886 ("Claim 3886" and, with Claim 3823, the "Prepetition Claims"), filed against Debtor M1 based on Lease X240470, asserted a total claim of $4,853,333.48. Galton Dep., pp. 57-60, identifying Claims 3823 and 3886; and see Claims 3823 and 3886, attached hereto, respectively, as Exhibits I and J.

21. Each of Claim 3823 and Claim 3886 sought the alleged "past due amounts" under the leases, as well as purported "remaining contract balances" and "equipment residual" value. *See* Exhibit A to Claim 3823, Exhibit I hereto, and Exhibit A to Claim 3886, Exhibit J hereto.

22. Neither of CIT's Prepetition Claims asserted any amounts due under, or sought rejection damages with respect to, Leases W204904 or W321627. *See* Claims 3823 and 3886, Exhibits I and J.

23. On October 11, 2001, CIT also filed two Requests for Allowance and Payment of Administrative Expenses, one against Debtor Mitchell (the "Original Mitchell Administrative Claim") and another against Debtor M1 (the "Original M1 Administrative Claim"), based upon,

5

respectively, the same leases that formed the bases for the Prepetition Claims – Leases W322655 and E215810 with respect to Mitchell, and Lease X240470 with respect to M1. *See* Galton Dep., pp. 60-63; and see Original Mitchell Administrative Claim and Original M1 Administrative Claim (collectively, the "Original Administrative Claims"), attached hereto, respectively, as Exhibits K and L.

24. CIT sought in the Original Administrative Claims rent and other costs and charges allegedly arising from the Petition Date through October 1, 2001. *See* Original M1 Administrative Claim, Exh. L, ¶ 6; Original Mitchell Administrative Claim, Exh. K, ¶ 6. CIT alleged that the Debtors or Trustee continued to use its equipment after the Petition Date. Exh. L, ¶ 4; Exh. K, ¶ 4.

25. The total amounts CIT sought under its Original Administrative Claims were: $81,546.45 with respect to Mitchell (Original Mitchell Administrative Claim, Exh. K, pp. 2, 3); and $380,411.48 with respect to M1 (Original M1 Administrative Claim, Exh. L, pp. 2, 3).

26. On or about November 30, 2001, the Trustee filed an Omnibus Objection to Administrative Claims which included objections to CIT's Original Mitchell Administrative Claim and Original M1 Administrative Claim. *See* Trustee's Omnibus Objection to Administrative Claims, Illinois Bankruptcy Court Docket, Dock. Entry No. 497.

27. On or about December 10, 2002, over one year after it filed its Prepetition Claims and Original Administrative Claims, CIT filed, with respect to Debtor Mitchell, a document styled "Amendment to Request for Allowance and Payment of Administrative Expenses" (the "Mitchell Equipment Value Claim"), based on Leases W322655 and E215810, seeking administrative expenses in the amount of $1,181,988.53. *See* Galton Dep., pp. 64-65; and see

Mitchell Equipment Value Claim, Illinois Bankruptcy Court Docket, Docket Entry No. 1107, attached hereto as Exhibit M.

28. Also on or about December 10, 2002, CIT filed, with respect to Debtor M1, a document styled "Amendment to Request for Allowance and Payment of Administrative Expenses" (the "M1 Equipment Value Claim" and, with the Mitchell Equipment Value Claim, the "Equipment Value Claims"). The M1 Equipment Value Claim was based on Leases X240470, W321627 and W204904 (although certain of the Lease numbers were incorrectly numbered) and sought administrative expenses in the amount of $1,293,767.46. *See* Illinois Bankruptcy Court Docket, Docket Entry No. 1106, attached hereto as Exhibit N. (The collective sums sought in the Equipment Value Claims -- $2,475,755.99 – is referred to hereinafter as the "Claimed Missing Equipment Value.")

29. CIT did not seek leave of Court to amend its Original Administrative Claims or to file its Equipment Value Claims. *See* Illinois Bankruptcy Court Docket (which reflects no such motion). In the Equipment Value Claims, CIT asserted that Trustee Maxwell had certain fiduciary duties, pursuant to 11 U.S.C. § 704, "to gather, administer and turnover property of the estate" and that he had breached those duties, including by allegedly failing to turn over to CIT certain of the telecom equipment leased to the Debtors by CIT, also described as the "Converted Equipment." *See* Mitchell and M1 Equipment Value Claims, Exhibit M, pp. 1-2, and Exhibit N, pp. 1-2.

30. CIT noted further that it was asserting "conversion claims" against Debtors, M1, CKS and Cybernautics, and sought to recover as an administrative expense the Claimed Missing Equipment Value, the alleged value of the "converted" equipment ("Missing Equipment"). Exhibit M, p. 2; Exhibit N, p. 1, n. 1, p. 2. In each Equipment Value Claim, CIT asserted that it

discovered the Trustee's alleged breach of duty "subsequent to the bar date for filing administrative expense claims (October 11, 2001)." Mitchell Equipment Value Claim, Exhibit M, p. 2; M1 Equipment Value Claim, Exhibit N, p. 2.

31. On or about February 18, 2003, the Trustee filed an Objection to Administrative Claims Filed by CIT Communications Finance Corporation, in which he objected to the Equipment Value Claims on several grounds, including the ground that they were not timely filed. Illinois Bankruptcy Court Docket, Docket Entry No. 1154, attached hereto as Exhibit O, pp. 2, 10-11.

### The CIT Adversary

32. On or about May 7, 2007, with no substantive hearings or rulings having been made by this Court on CIT's pending Prepetition and Administrative Claims or the Trustee's objections to them, CIT initiated an adversary proceeding against the Trustee, both personally and in his official capacity, by filing its Complaint ("Complaint") in Adversary No. 07-A-0379 (the "Adversary")). *See* Complaint in Adversary No. 07-A-0379, Exhibit P hereto.

33. CIT's Complaint alleged, among other things, that the Bankruptcy Court had jurisdiction under 28 U.S.C. §1334(b) and 28 U.S.C. § 157(b)(2)(A), and acknowledged that CIT's Leases were rejected on or about June 26, 2001. *Id.*, ¶ 9, p. 13. Complaint, Exh. P, ¶ 4, p. 2. The Complaint alleged that Trustee Maxwell had fiduciary duties pursuant to 11 U.S.C. § 704 (as well as 11 U.S.C. §§ 323 and 702) (*Id.*, ¶ 24, p. 6), and breached those duties, including by allegedly failing to file a timely, complete inventory for Debtors, failing to safeguard the Equipment and ignoring CIT's request for return of the Equipment. Complaint, Exh. P, ¶¶ 28, 31. CIT also alleged that the Trustee failed to "insure and safeguard all property that comes into [his] hands...," citing the United States Trustee Manual as support for its claim. Complaint, Exh. P, ¶¶ 11, 25.

34.   CIT claimed that it had leased more than $4.7 million of telephone equipment to the Debtors before they filed for bankruptcy relief and alleged that the "actions of Maxwell and his agents prevented CIT from recovering more than $3.6 million of the Equipment." Complaint, Exh. P, ¶¶ 6, 22. CIT sought judgment for those alleged damages and also asserted a right to recover its costs of recovering the Missing Equipment and its alleged lost profits from not being able to re-lease the Missing Equipment. Complaint, Exh. P, pp. 7-11. CIT's theories of liability were as follows:  Count I - Breach of Fiduciary Duty Against Maxwell in His Personal Capacity; Count II – Breach of Fiduciary Duty Against Maxwell in His Capacity as Chapter 7 Trustee of Debtors; Count III – Ultra-Vires Activities Against Maxwell in His Personal Capacity; and Count IV – Constructive Bailment Against Maxwell in His Capacity as Chapter 7 Trustee of Debtors. Complaint, Exh. P, Counts I, II, III and IV. CIT's breach of fiduciary duty claims alleged the same conduct for its action against Maxwell personally as for its action against him in his official capacity. Complaint, Exhibit P, ¶¶ 28, 31, pp. 6-8.

### The Bankruptcy Court Dismissal of the Adversary

35.   The Trustee challenged the Complaint by filing in the Adversary a Motion to Dismiss and Strike ("Motion to Dismiss"), pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure, and a Memorandum of Law in Support ("Trustee's Dismissal Brief"). Motion to Dismiss, Exhibit Y hereto; Trustee's Dismissal Brief, Exhibit Z hereto. Among other things, the Trustee asserted in the Trustee's Dismissal Brief that the Complaint was barred by the Illinois Statute of Limitations (Trustee's Dismissal Brief, Exh. Z, pp. 8-10) and that Counts II and IV should be stricken as duplicative of CIT's Equipment Value Claims. *Id.*, pp. 11-12.

36.   In or about November of 2007, the Illinois Bankruptcy Court issued a Memorandum Opinion finding that CIT's claims asserted in the Complaint were barred by the applicable Illinois' five year statute of limitations, because the Complaint was filed more than

9

five years after the causes of action accrued. *See* Memorandum Opinion issued by Bankruptcy Judge Schwartz on November 15, 2007, attached hereto as Exhibit Q, pp. 7-8. The Memorandum Opinion concluded that the Complaint would be dismissed in its entirety. Memorandum Opinion, Exh. Q, p. 10. On the same day, the Illinois Bankruptcy Court also issued an Order dismissing the Adversary. November 15, 2007 Order dismissing Adversary, attached hereto as Exhibit R. (Collectively, the Memorandum Opinion and the Order dismissing the Adversary are referred to herein as the "Bankruptcy Court Judgment").

37. In its Memorandum Opinion, the Illinois Bankruptcy Court found that CIT had notice that it had a dispute with the Trustee over CIT's property on each of several events or occurrences, including (1) on November 2, 2001, when Trustee Maxwell caused a Statement of Financial Affairs to be filed which represented that the Debtors did not hold any property owned by another person, and (2) within a few weeks after its July 20, 2001 written communication by CIT to the Trustee, when CIT did not get satisfaction with regard to the return of its property, yet did not seek court intervention. Memorandum Opinion, Exh. Q, pp. 8-9. The Illinois Bankruptcy Court further noted that CIT "never even sought payment on its administrative claim." Memorandum Opinion, Exh. Q., p. 9.

38. On or about November 26, 2007, CIT filed a Notice of Appeal to the U.S. District Court. *See* Notice of Appeal, attached hereto as Exhibit S.

39. On or about June 27, 2008, while its appeal in the Adversary was pending, CIT filed in the Bankruptcy Case a Motion to Compel Payment of CIT's Administrative Claims ("Motion to Compel"). *See* June 27, 2008 Motion to Compel, Illinois Bankruptcy Court Dock. No. 3795. Prior to its Motion to Compel, CIT did not bring any motion before the Bankruptcy

10

Court requesting payment of any of its Administrative Claims. *See* Illinois Bankruptcy Court Docket (which reflects no prior motion).

### District Court Ruling

40. On or about September 12, 2008, the U.S. District Court affirmed the Bankruptcy Court's ruling in the Adversary in a Memorandum Opinion and Order and a separate Judgment, both in District Court Case No. 08 CV 00121. *See* Memorandum Opinion and Order and Judgment, attached hereto, collectively, as Exhibit T. The District Court expressly stated that:

> It is apparent from the Complaint that CIT knew it had been injured after June 26, 2001, when its property was not returned after the leases had been rejected. And, viewing the Complaint in the light most favorable to CIT, it is also clear that CIT should have known that the injury might have been wrongfully caused shortly after July 20, 2001, when Maxwell and others failed to honor CIT's request for the return of its equipment. By that time CIT had enough information to cause a reasonable person to commence an inquiry…

*Id.*, Exhibit T, p. 7.

41. On or about October 10, 2008, CIT filed a Notice of Appeal from the District Court's Memorandum Opinion and Order and Judgment, thereby taking an appeal to the U.S. Court of Appeals for the Seventh Circuit. *See* Notice of Appeal in District Court Case No. 08 CV 00121, attached hereto as Exhibit U.

### The Seventh Circuit's Decision

42. On December 21, 2009, the Seventh Circuit Court of Appeals entered a decision affirming the District Court's ruling (the "7th Circuit Decision"). *See* U.S. Court of Appeals decision in Appeal No. 08-3600, attached hereto as Exhibit V.

43. In the 7th Circuit Decision, the Court held, among other things, that: "CIT knew of Maxwell's [alleged] wrongful conduct in relation to [CIT's] phone equipment during the summer and fall of 2001 and the statute of limitations commenced on that date." 7th Circuit Decision, Exhibit V, p. 6. The Seventh Circuit further stated in its Decision that:

> [T]he complaint alleges that Maxwell failed to inventory the equipment and publicly declared in the Statement of Financial Affairs that marchFIRST did not possess the equipment.... These events should have put CIT on notice that it had been injured.... And as a sophisticated party appearing in the bankruptcy proceedings, CIT should have known that its injury was wrongfully caused....

7th Circuit Decision, Exhibit V, p. 8. The Seventh Circuit also specifically noted that CIT alleged it requested return of its Equipment on July 20, 2001, and that the Trustee and his agents "stonewalled CIT." 7th Circuit Decision, Exhibit V, p. 2. The Seventh Circuit concluded that CIT "plead[ed] itself out of court" by disproving its own claim that it was unaware of its injury for at least five years before the complaint was filed when it contended that it made repeated attempts to recover the Equipment in the summer and fall of 2001, and that the Trustee refused to cooperate. 7th Circuit Decision, Exhibit V, p. 7. Among the events described by the Seventh Circuit as putting CIT on notice of an allegedly wrongfully caused injury, the latest in time was November 8, 2001. *Id.*, p. 8.

### Subsequent Proceedings on CIT Claims

44.    On or about February 5, 2010, the Trustee filed formal objections to CIT's Prepetition Claims. *See* Trustee's Objections to Prepetition Claims (Claim Nos. 3823 and 3886), Illinois Bankruptcy Court Docket Entry No. 4379. CIT filed its response to the Trustee's objections on or about March 10, 2010. *See* CIT's Response to Trustee's Objections, Illinois Bankruptcy Court Docket Entry No. 4427.

45.    On or about February 26, 2010, the Trustee filed his Supplemental Objections to CIT's Administrative Claims, asserting, among other things, that principles of res judicata, issue preclusion and law of the case barred the Administrative Clams in whole or in part. *See* Trustee's Supplemental Objections to Requests for Allowance and Payment of CIT's Administrative Claims, Illinois Bankruptcy Court Docket Entry No. 4410. CIT has not responded to the Trustee's Supplemental Objections to CIT's Administrative Claims. *See*

Illinois Bankruptcy Court Docket (not reflecting any filed response). On March 10, 2010, this Court entered an Order consolidating for all purposes all of the Trustee's objections to CIT's Prepetition Claims and Administrative Claims and CIT's Motion to Compel. Order Granting Motion to Consolidate Disputes With CIT, Illinois Bankruptcy Court Docket Entry No. 4434.

46. On or about April 10, 2010, the Trustee filed his Second Supplemental Objections to CIT's Administrative Claims, asserting additional challenges to CIT's claims. *See* Second Supplemental Objections to CIT's Claims, Illinois Bankruptcy Court Docket Entry No. 4478.

Dated: July 9, 2010

**ANDREW J. MAXWELL**, not individually, but solely as chapter 7 Trustee

By: /s/ Patricia K. Smoots
One of his Attorneys

Richard J. Mason, P.C. (ARDC #01787659)
Patricia K. Smoots (ARDC #06194076)
Michael M. Schmahl (ARDC #06275860)
Paul J. Catanese (ARDC #06292530)
McGuireWoods LLP
77 W. Wacker Drive, Suite 4100
Chicago, IL 60601
(312) 849-8100

\11253981.3