IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| marchFIRST, INC., *et al.,* | ) | Case No. 01 B 24742 |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | Honorable A. Benjamin Goldgar |

**CIT'S RESPONSE TO TRUSTEE'S MOTION FOR SUMMARY
JUDGMENT ON CIT'S REQUEST FOR ADMINISTRATIVE EXPENSE**

**INTRODUCTION**

The Estate's motion for summary judgment attempts to contort the doctrine of *res judicata* in order to achieve a draconian result neither contemplated nor permitted by the law.

In 2001 and 2002, CIT filed administrative requests seeking allowance of its claims against the Estate concerning equipment it leased to the Debtors. These requests seek recovery – out of the assets of the Estate – for lost equipment and the Estate's post-petition use of that equipment. In 2007, CIT filed an adversary proceeding against Trustee Maxwell personally seeking damages for his intentional and deliberate obstruction of CIT's efforts to recover its equipment. This Court dismissed the adversary proceeding pursuant to the *Barton* Doctrine, holding that CIT could not file the action without permission from the Court and declining to provide such permission *instanter* due to the expiration of the statute of limitations.

Contrary to the Estate's convoluted theory, *res judicata* does not prevent CIT from proceeding on its previously (and timely) filed administrative requests. The Estate cannot meet its burden of establishing any of the specific elements of *res judicata* because: (1) the operative facts underlying the causes of action are different (Trustee Joseph's failure to secure and return the equipment versus Trustee Maxwell's intentional obstruction of CIT's attempts to recover the equipment); (2) the parties are different (the Estate versus Trustee Maxwell); and (3) the Court's dismissal of the adversary proceeding was not "on the merits" (the ruling on the *Barton* Doctrine

182783                                                           1

deprived the Court of subject matter jurisdiction). Moreover, even if the Estate could satisfy the specific elements of *res judicata*, the doctrine still would not apply because of the exceptions under Section 26(1)(c) and (d) in the Restatement (Second) of Judgments.

The Estate also argues that CIT was not entitled to amend its Administrative Requests after the bar date to include an additional element of expense, but it cites no authority that such amendments are not permitted. In fact, such amendments are freely allowed. Even if this Court were to find that the amendment was so different from the original Administrative Request that it should have been filed as a separate claim, CIT would have had several valid bases on which to file after the bar date. Accordingly, CIT respectfully requests that the Court deny the Estate's motion for summary judgment.

## FACTS

CIT incorporates its Response to the Estate's Statement of Facts pursuant to Local Rule 7056-2 and its Statement of Additional Facts in Opposition to the Estate's Motion for Summary Judgment pursuant to Local Rule 7056-2.

## ARGUMENT

### A. STANDARD OF REVIEW

Summary judgment is only proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party to show that no genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the inference to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

B. **THE ESTATE FAILS TO ACKNOWLEDGE LIMITATIONS OF THE DOCTRINE OF *RES JUDICATA***

No dispute exists that the Estate must demonstrate the following specific elements of *res judicata*: 1. an identity of cause of action; 2. an identity of parties; and 3. a final judgment on the merits. *Perry v. Globe Auto Recycling, Inc.*, 227 F.3d 950, 952 (7th Cir. Ill. 2000).[1] However, courts also have imposed the requirement that the application of *res judicata* not be inequitable. *See, e.g.*, *Spilker v. Hankin*, 188 F.2d 35, 39 (D.C. Cir. 1951) (holding that "res judicata, as the embodiment of a public policy, must, at times, be weighed against competing interests, and must, on occasion, yield to other policies."); *Brown v. Felsen*, 442 U.S. 127, 132 (1979) (superseded by statute on other grounds)(counseling against misuse or casual application of the doctrine); *Andersen v. Chrysler Corp.*, 99 F.3d 846, 852 (7th Cir. 1996) (*res judicata* not meant to be a trap for the unwary); *R.W v. T.F.*, 528 N.W.2d 869, 872 n. 3 (Minn. 1995)(*Res judicata* is a "flexible doctrine" that need not always be applied if it would be contrary to the interests of justice). Section 26(1) of the Restatement (Second) of Judgments sets out several situations where *res judicata* would be inequitable and therefore may not be applied. *Liu v. Striuli*, 36 F. Supp. 2d 452, 471 (D.R.I. 1999) (holding that the Restatement "recognizes several broad exceptions to the general rule…"); *see also George v. City of Morro Bay (In re George)*, 318 B.R. 729 (9th Cir. 2004) (holding that "[t]he Supreme Court treats the Restatement (Second) of Judgments [] as an

---

[1] Although the Estate does not take a position on the question of whether Illinois or federal law applies (Trustee's Memo. at 7-8, n. 8), federal law controls. *Semtek Int'l, Inc. v. Lockeed Martin Corp.*, 531 U.S. 497, 499 (2001), a case the Estate cited, has no application here. *Semtek* involved a state-law cause of action removed on diversity grounds. Here, the dispute concerns the administration of a bankruptcy case, which is subject to exclusive federal jurisdiction. Furthermore, the Estate admitted that the adversary proceeding was based on fiduciary obligations arising under federal law. (Memo. at 8, n. 8.) The distinction between cases arising under state versus federal law was acknowledged in *Taylor v. Sturgell,* 553 U.S. 880, __, 128 S. Ct. 2161, 2171 (2008), where the Supreme Court clarified its decision in *Semtek*. *Taylor* held that "[t]he preclusive effect of a federal-court judgment is determined by federal common law. … For judgments in federal-question cases … federal courts participate in developing 'uniform federal rule[s]' of *res judicata*, which this Court has ultimate authority to determine and declare." Consequently, this Court should apply federal law to this matter.

authoritative statement of federal *res judicata* doctrines"). Specifically, Section 26(1) states that *res judicata* shall not apply where:

> (c) The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts . . . and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief;
>
> (d) The judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme, or it is the sense of the scheme that the plaintiff should be permitted to split his claim. . . .

*See also Liu*, 36 F. Supp. 2d at 471.

As discussed below, the Estate has failed to meet its burden of showing the three specific elements of *res judicata.* However, even if it had done so, the equitable exceptions under Sections 26(1)(c) and (d) of the Restatement would preclude *res judicata*.

**C. THE ESTATE CANNOT ESTABLISH ANY OF THE THREE SPECIFIC ELEMENTS OF *RES JUDICATA***

**1. The Administrative Request and the Adversary Proceeding are Based on Different Facts**

The Estate has not shown (and cannot show) an identity of causes of action because the Administrative Request and the Adversary Proceeding are based on different operative facts.[2] An identity of claims exists only if they arise from "a single core of operative facts which give rise to a remedy." *In re: J.S. II, L.L.C.*, 389 B.R. 570, 584 (Bankr. N.D. Ill., 2008) (internal citation omitted). "[I]f the supposedly wrongful events are separated by time and function, multiple suits are permissible . . ." *Perkins v. Bd of Trustees*, 116 F.3d 235, 237 (7th Cir. 1997); *see also J.S. II*, 389 B.R. at 584. The Adversary Proceeding focused on Trustee Maxwell's deliberate and willful attempts to prevent CIT from recovering its equipment; whereas the Administrative Request focuses on the Estate's loss of the Equipment, primarily because of Trustee Joseph's failure to

---

[2] It is not even clear that the Administrative Request is a "cause of action." CIT filed its Administrative Request, pursuant to Section 503(b), seeking prioritization of its claim for the value of its equipment as an "actual and necessary" cost of the Estate. The request only became a contested matter after the Estate filed its objection pursuant to Fed. R. Bank. Pro. 9014. However, even if the Administrative Request is considered a "cause of action," it is fundamentally different from the claim made in the Adversary Proceeding.

182783                                                            4

secure and return the Equipment but also because of Trustee Maxwell's negligence in doing the same. Thus, the operative facts are separated by time, function, and the responsible individuals.

In a case that is instructive, the court in *J.S. II* permitted a second claim against the same defendants arising out of the same contractual obligation. Defendants Kinsella and Diamond allegedly failed to make a required $5 million capital contribution to the debtor. In 2007, the court entertained selling certain real property of the estate subject to a mortgage. *Id*. at 584. A claimant, Snitzer, objected on the basis that the price was too low and that a better solution would be to require Kinsella and Diamond to fulfill their obligation to pay off the lender. *Id.* The court denied the objection and ordered the sale. Later, Snitzer brought an adversary proceeding against Kinsella and Diamond, claiming that their failure to make the contributions caused the debtor financial problems in 2005 and 2006. *Id.* at 586. Snitzer argued that *res judicata* did not bar the adversary proceeding because even though both actions concerned Kinsella and Diamond's obligation to make the contribution, the objection to the property sale involved financial issues in late 2007 and the adversary proceeding concerned financial issues in 2005 and 2006. *Id.* at 585-6. The court agreed, and stated that "[s]ince the [claim for equitable subordination] is not based on the same core of operative facts which give rise to a remedy, there is no identity of causes of action." *Id.* at 585.

Here, the Administrative Request and the Adversary Proceeding also rest upon different sets of facts which are separated by both time and function. It is now apparent that almost all of the facts supporting the Administrative Request occurred shortly after the petition was filed and during the tenure of Trustee Joseph.[3] Evidence adduced during discovery demonstrates that during the period from April to June, 2001: (1) the Estate failed to take an inventory of the property in its possession (St. Add. Facts at ¶ 11); (2) the Estate had control and possession of

---

[3] CIT's original Administrative Request and the Amended Request did not make any reference to Trustee Joseph and actions taken by him and those working with him. Through discovery, however, CIT has learned that the facts supporting its right to an administrative expense, which are set out in CIT's Local General Rule 56.1 Statements, largely occurred during his tenure. CIT intends to move to for leave to file a second amendment to its Administrative Request to reflect these facts.

182783                                                      5

CIT's equipment but has not produced any evidence that it ever secured any of the locations (St. Add. Facts at ¶¶ 11-12); (3) CIT was in constant communication with the Estate's agents concerning the equipment (St. Add. Facts at ¶¶ 12-13); (4) at least one of the Estate's agents notified the Trustee that the Estate had $2.5 million of CIT's equipment, listed the location of this equipment, and stated that it needed to be returned to CIT (St. Add. Facts at ¶¶ 12, 15); (5) the Estate's agents agreed that it would be reasonable for the Estate to return the equipment (St. Add. Facts at ¶¶ 12-13, 16); (6) counsel for CIT had multiple communications with Trustee Joseph's counsel concerning the equipment prior to the rejection of the leases (St. Add. Facts at ¶¶ 16-17). In contrast, the Adversary Proceeding only alleged facts about Trustee Maxwell and which occurred during the time he was Trustee (*i.e.*, after July 16, 2001).

The facts underlying the Administrative Request and the Adversary Proceeding are also separated by function. The Administrative Request relies upon fundamental fairness in situations where a trustee has caused injury to a party. *Reading Co. v. Brown,* 391 U.S. 471 (1968). In contrast, the Adversary Proceeding was based solely on the intentional and deliberate malfeasance by Trustee Maxwell, which is required in this Circuit before a trustee may be held personally liable for his actions. *In re Weisser Eyecare, Inc.*, 245 B.R. 844, 849 (Bankr. N.D. Ill. 2000) (*citing In re Chicago Pacific Corp.*, 773 F.2d 909, 915 (7th Cir. 1985)). Each of the counts of the Adversary Complaint incorporated the allegations of Paragraph 22, which alleged that Trustee Maxwell's deliberate actions were a cause of its loss. CIT alleged that Trustee Maxwell intentionally thwarted CIT's attempts to recover its equipment, and willfully refused to return equipment in his possession and control.

Accordingly, different evidence and different facts are required to prove the Administrative Request and Adversary Claim and, therefore, they are different claims for *res judicata* purposes.

### 2. The Administrative Request and the Adversary Proceeding do not Involve the Same Parties

The Estate's *res judicata* argument also fails because the parties to the Administrative Request and the Adversary Proceeding are not the same. In the Adversary Proceeding, the only parties were CIT and Trustee Maxwell. In the Administrative Request, the only parties are CIT and the Estate. However, the distinction between the parties is even greater because, as discussed below, courts have made clear that in a request for administrative expense, the actual parties in interest are the other creditors whose recovery may be reduced.

The Estate erroneously states that any claims against the trustee for actions taken in his official capacity are claims against the estate. On the contrary, unlike claims for *ultra vires*, claims for breach of fiduciary duty are always brought against the trustee in his official capacity because the breaches necessarily occur while the trustee was performing duties for the estate. *Schechter v. State of Ill. Dept. of Revenue (In re Markos Gurness P'ship.),* 182 B.R. 211, 216-7 (Bankr. N.D. Ill. 1995). However, as Judge Wedoff discusses in *Schechter*, a case upon which the Estate relies, the trustee is personally liable for breaches of fiduciary duty (including being accountable for all property received), and a suit to redress such breaches is not considered a suit against the estate. *Id.* at 217. Judge Wedoff further explains the basis for personal liability and notes that "fiduciary claims against trustees involve personal trustee liability, with no necessary impact on the assets of the estate." *Id.*, at 223. The only party that would have been held liable if CIT had succeeded on its Adversary Proceeding would have been Trustee Maxwell.

Trustee Maxwell's actions demonstrated that he understood that the Adversary Proceeding was against him personally, not the Estate, and that he would bear any liability personally. Trustee Maxwell hired his own personal counsel to defend him in the Adversary Proceeding, and his counsel's appearance form stated that the only party being represented was "Andrew Maxwell." (St. Add. Facts at ¶ 31.) During several conversations with counsel for the Trustee and counsel for the Estate, counsel repeatedly represented that they were representing

different parties in the litigation and could not speak for the other. (St. Add. Facts at ¶ 32.)[4] The Estate never asked for authorization to employ Clausen Miller to represent its interests in the matter, nor did it ever pay for Trustee Maxwell's lawyers in the Adversary Proceeding. (St. Add. Facts at ¶ 33.) Consequently, no question exists that the only party involved with the Adversary Proceeding was Trustee Maxwell and that any amounts that CIT would have been awarded would have been payable solely by him.

In contrast, the Administrative Request only seeks that its claim for lost equipment be given an administrative priority over other creditors, which is an action against the Estate based on the Supreme Court's decision in *Reading Co. v. Brown,* 391 U.S. 471 (1968). In *Reading,* the Supreme Court held that when an innocent party is harmed by the improper administration of the estate, the innocent party's damages are considered an "actual and necessary cost" of the estate under Section 503(b)(1)(A), and the court may grant administrative priority to such claims. *Id.* In other words, CIT is allowed to elevate its claim against the Estate and be paid prior to other creditors for whose benefit the Estate was being operated out of the Estate's funds. *Id.* at 478. The analysis in *Reading* further shows that the real parties in interest to a request for administrative expense are the creditors who will receive less if the expense is paid. *Id.* at 482-3 ("Existing creditors are, to be sure, a dilemma not of their own making, but there is no obvious reason why they should be allowed to escape that dilemma [the consequences of losses caused by the operation of the business] of the risk of imposing it on others equally innocent.")

Therefore, the parties in the Administrative Request and the Adversary Proceeding are not the same, and the Estate cannot satisfy the identity of parties element.

---

[4] Trustee Maxwell's representations also show that he assented to the alleged claim-splitting. Courts have held that a party can be deemed to have assented to the maintenance of two separate suits by his conduct. In *Piagenitini v. Ford Motor Co.*, 387 Ill. App. 3d 887, 897 (1st Dist. 2009) the court found that where a defendant had actively participated in second case for 3 and one half years without raising *res judicata*, the defendant was deemed to have had "acquiesced" in the filing of the second case, and could not maintain the defense. Here Maxwell's representations that he and the Estate were separate parties indicated that he did not intend to pursue a *res judicata* theory, and therefore he has assented to the existence of two claims.

182783                                8

### 3. The Judgment in the Adversary Proceeding was Not "On the Merits"

The Estate also cannot satisfy the final element of *res judicata*, *i.e.*, that the judgment in the Adversary Proceeding was "on the merits." A dismissal for lack of jurisdiction is not on the merits and cannot support the application of *res judicata*. Restatement (Second) of Judgments § 20(1)(a). The Bankruptcy Court's finding that it could not hear the Adversary Case because CIT had not requested and obtained the permission required by the *Barton* Doctrine was not "on the merits." *Merryweather v. U.S.*, 12 F.2d 407, 409 (9th Cir. Wash. 1926) ("the generally accepted understanding of the decision in *Barton v. Barbour*, 104 U.S. 126 . . . is that the Supreme Court holds that obtaining leave to sue is jurisdictional").

Moreover, the fact that the Bankruptcy Court entertained CIT's request for permission to file the suit – a request not contained in the Adversary Complaint – does not change this result. (St. Add. Facts, Ex. L, at 6.) The Court's denial of CIT's motion for permission to file a suit is not a "dismissal" and cannot be considered to be a decision "on the merits."

### D. CIT FALLS WITHIN EXCEPTIONS TO SECTIONS 26(1)(C) AND (D) OF THE RESTATEMENT

Even if the Estate could prove the specific elements of *res judicata* (*i.e.*, an identity of claims, an identity of parties, and a judgment on the merits), *res judicata* still would not apply because (1) CIT was unable to obtain relief against Trustee Maxwell in the then-existing Administrative Request because of lack of subject matter jurisdiction; and (2) to the extent that this constitutes claim splitting, it is contemplated by the Bankruptcy Rules.[5] Thus, Restatement §§ 26(1)(c) and (d) prevent the Estate from relying on *res judicata*.

---

[5] CIT does not admit that it split its claims. CIT simply used the bankruptcy procedure under Section 503(b) to request an administrative priority for its claim for lost equipment and sought damages from the trustee, personally, in an adversary proceeding because it could not have raised such claims under 503(b).

182783                                                  9

### 1. Section 26(1)(c) Bars Application of Res Judicata Because It Was Not Possible to File the Claim Against the Trustee Personally Under the Administrative Request

The Estate cannot assert *res judicata* because CIT was unable to seek personal liability against Trustee Maxwell in its Administrative Request. CIT initiated the administrative request procedure (*i.e.*, the "first action") on October 11, 2001. CIT did not have knowledge of Trustee Maxwell's wrongful conduct until at least November 7, 2001, when he filed his Statement of Financial Affairs.[6] The Court of Appeals stated that CIT was "first reasonably aware of its injury and its wrongful cause . . . in November, 2001." (St. Add. Facts, Ex. N, at 6.) CIT could not have added this cause of action to its Administrative Request because the Court had no subject matter jurisdiction under Section 503(b). The claim for personal liability against Trustee Maxwell could only have been brought as an Adversary Complaint. Fed. R. Bank Pro. 7001 provides that a "proceeding to recover money . . ." with certain exceptions which are not relevant, is an adversary proceeding. *See Haber Oil v. Swinehart*, 12 F.3d 426, 436-441 (5th Cir., 1994) (reversing bankruptcy court which had allowed a type of claim listed in Rule 7001 to proceed without the filing of an adversary proceeding, and giving, as one of the reasons for the rule, the need to determine whether proceedings are core or non-core). Thus, the Adversary Proceeding falls with the exception in Restatement (Second) Section 26(1)(c), because Rule 7001 deprived the Court of subject matter jurisdiction unless a second action in the form of an adversary complaint was filed. *Id*. at 436-441.

---

[6] The Bankruptcy Court, the District Court and the Court of Appeals all found CIT first knew, or reasonably should have known of its adversary claim on November 8, 2001. (St. Add. Facts at ¶ 27.) The Estate claims that the Bankruptcy Court found that CIT should have known of its cause of action "within a few weeks after its July 20 communication with the Trustee . . .," (Memo., at 6) but this statement is taken out of context. The court stated that "The most obvious notice to CIT was the fact that on November [7], 2001, Maxwell caused to be filed a Statement of Financial Affairs . . ." (*Id.,* at 8.) The Estate also claims that the District Court found that CIT was on notice "shortly after July 20, 2001," (Memo., at 6), but again this is out of context. The District Court stated "And although it is plausible that Maxwell refused CIT access to the Debtor's premises to prevent CIT from discovering its potential claims, nothing prevented CIT from making that discovery on November 8, 2001, when Maxwell publicly represented that the Debtors did not possess anyone else's property . . . It had five years to conduct an inquiry, and the statute of limitations expired no later than November 8, 2006." (St. Add. Facts, Ex. M, at 8.)

### 2. Section 26(1)(d) Bars Application of Res Judicata Because The Rules Require CIT to File Its Personal Claim Against Trustee Maxwell Separately

The Adversary Proceeding also falls into the exception in Section 26(1)(d), because the sense of the scheme of Bankruptcy Rules is that a plaintiff should file claims against the estate as either proofs of claim or administrative expense requests and that claims against other parties should be filed as adversary proceedings. As set forth above, CIT did exactly that – it filed its claim against the estate as a request for an administrative expense and its claim against Trustee Maxwell as an adversary proceeding. Consequently, Section 26(1)(d) bars application of *res judicata*.

### E. The Estate is Judicially Estopped from Asserting its *Res Judicata* Argument

The Court's ruling on the *Barton* Doctrine also dictates that the Estate is estopped from asserting its *res judicata* argument in this proceeding. Assuming, *arguendo,* that the Estate had been a party to the Adversary Case – a fact which CIT denies – it could not now assert jurisdictional arguments inconsistent with the ones made in the Adversary Case. According to the Seventh Circuit, "a party that has won a suit on one ground may not turn around and in another case obtain another judgment on an inconsistent ground." *Bethesda Lutheran Homes & Servs. v. Born,* 238 F.3d 853, 857-858 (7th Cir. 2001). Yet that is exactly what the Estate attempts to do in its motion.

In the Adversary Case, Trustee Maxwell successfully argued that the case should be dismissed because CIT had not requested leave under the *Barton* Doctrine and that the Court therefore did not have jurisdiction. *See Merryweather v. U.S.*, 12 F.2d at 409 (9th Cir. Wash. 1926). Having won the argument that the court lacked jurisdiction, neither Trustee Maxwell nor the Estate can now turn around and state that the court had jurisdiction to enter a decision on the merits. The Estate therefore is judicially estopped from pursuing its *res judicata* argument.

F. **CIT'S AMENDED CLAIMS WERE TIMELY FILED**

    **1. CIT's Amended Requests Relate Back to Its Original Proofs of Claim and Administrative Requests**

Ironically, even though the Estate's affirmative defense of *res judicata* was filed more than 2 ½ years after the dismissal upon which it is based,[7] the Estate seeks to preclude CIT from amending its proofs of claim to conform to the facts adduced during discovery. However, courts freely allow amendments to proofs of claim if the amendment is furtherance of justice. *Dabney v. Addison*, 65 B.R. 348 (E.D. Va. 1985). An amendment to a timely filed claim can be made after the bar date to "cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim." *In re Kolstad*, 928 F.2d 171, 175 (5th Cir. 1991); *Hatzel & Buehler, Inc. v. Station Plaza Assoc., L.P.*, 150 B.R. 560, 562 (Bankr. D. Del. 1993). Although finality is desired in bankruptcy proceedings, "in some circumstances fairness and equity require that strict adherence to deadlines be relaxed and that filing of amended proofs of claim be permitted." *Dabney,* at 350 (*citing Wilkens v. Simon Brothers, Inc.*, 731 F.2d 462 (7th Cir. 1984)). Consequently, courts "endeavor wherever possible to do equity, and the trend of modern decisions is uniformly toward the greatest liberality in the allowance of the filing of amended proofs of claim." *Id.*

Here, the Estate does not dispute that CIT's original proofs of claim and Administrative Request were timely. Nor can it reasonably be disputed that CIT asserted a new theory of recovery on the lease transactions set forth in the original claims. *See, In re Candy Braz., lnc.*, 98 B.R. 375 (Bankr. N.D. Ill. 1988). The Estate cites no authority to the contrary. Consequently, CIT's amendment related back to the original administrative requests and proofs of claim.

---

[7] *Res judicata* is an affirmative defense that is waived unless specifically and timely raised. *See, e.g.*, Fed. R. Civ. Pro. 8(c); Fed. R. Bank. Pro. 7008; *Castro v. Chicago Housing Auth.*, 360 F.3d 721, 735 (7th Cir. 2004); C.A. Wright and A. Miller, Federal Practice and Procedure: Civil § 4405. *See also Talton v. Unisource Network Servs.*, Case No. 00 C 7967, 2004 U.S. Dist. LEXIS 25886, *7 (N.D. Ill. Dec. 20, 2004) (finding that waiting a year and a half to assert defense constituted undue delay)

### 2. The Estate was at Least Partially Responsible for any Delay in filing the Claim

Even if CIT's amended requests were considered separate claims, CIT would be entitled to leave to file them after the bar date because the Trustee's actions contributed to the delay in filing. After the bar date, the Estate represented to CIT and other equipment lessors that it was trying to assist them in the return of their equipment. Indeed, in February 2002, the Estate and all of those lessors, including CIT, participated in a meeting. (St. Add. Facts at ¶ 21.) At that meeting, the Estate agreed that it would continue to work to resolve CIT's claims and facilitate return of CIT's equipment. (St. Add. Facts at ¶ 21.) After that date, CIT still recovered some of its equipment. (St. Add. Facts at ¶ 22.) Consequently, CIT could not even be sure that it had incurred a loss of all its equipment and could not have filed an amended claim at that time. *In re Candy Braz., lnc.*, 98 B.R. 375 (Bankr. N.D. Ill. 1988)(equities favor allowance of amended claim).

In the summer of 2002, the Estate for the first time stated that the resolution of CIT's equipment claim must be in the context of a determination of the value of the equipment not returned to CIT. (St. Add. Facts at ¶ 23.) After CIT presented that valuation, the Estate ignored it for months, refused to resolve the matter, and eventually failed to provide any further assistance to CIT in the recovery of its equipment. (St. Add. Facts at ¶ 24.) Consequently, CIT could not even have known until at least late-2002 that its claims must be handled as a lost equipment claim. The Estate's continued promises of equipment recovery followed by a change in the delay changed the circumstances in this case and, therefore, necessitates that this Court to equitably extend the time to file a proof of claim. *See, e.g., Wilkens v. Simon Bros., Inc.*, 731 F.2d 462, 464 (7th Cir. Ill. 1984) (noting that courts have granted equitable extensions of time if (1) the fraud of a debtor prevents the timely filing by a creditor; (2) the creditor fails to receive notice of the proceedings; or (3) other extraordinary circumstances arise); *Hatzel & Buehler, Inc. v. Station Plaza Assoc., L.P.*, 150 B.R. 560, 562 (Bankr. D. Del. 1993) (holding that the

engagement in settlement negotiations that could resolve the matter and "foot-dragging" (i.e., at least partial responsibility for the delay) by the party opposing the amendment are reasons to grant an equitable extension).

### 3. CIT's Amended Requests Relate Back to Its Informal Claims Against the Estate

The Estate's argument also disregards all of the informal written claims CIT made for the equipment. The Seventh Circuit holds that if a creditor made an informal, de facto claim within the time period set forth in the bankruptcy procedure rules, then a "late" proof of claim could be treated as a perfecting amendment of that earlier, informal claim. *Wilkens,* 731 F.2d at 464 (citing Hutchinson v. Otis, 190 U.S. 552, 555, 23 S. Ct. 778, 779, 47 L. Ed. 1179 (1903)); *Sun Basin Lumber Co. v. U.S.*, 432 F.2d 48, 49 (9th Cir. 1970) ("It is well settled that if there is upon the record in the bankruptcy proceedings, within the six months prescribed by § 57, sub. n, anything sufficient to show the existence, nature and amount of a claim, it may be amended even after expiration of the six month period").  Here, CIT was in constant contact with the Estate concerning its equipment (St. Add. Facts at ¶¶ 12-13), filed pleadings to prevent the Estate from selling CIT's equipment (*See, e.g.,* Delaware Docket No. 258 (CIT's Limited Objection to Trustee Joseph's Motion with Respect to Proposed Sale of Certain of the Debtors' Assets to SBI Services, Inc.), and sent e-mails to counsel for the Estate in both Delaware and Illinois identifying the equipment and its last known locations prior to the bar date (St. Add. Facts at ¶¶ 16-19). Even the Estate's own employee, Robert Szczepanski, notified the Estate of the equipment, its location, and its value. (St. Add. Facts at ¶¶ 12-15.) Consequently, CIT's Amended Requests relate back to these informal proofs of claims.

**CONCLUSION**

      Wherefore, CIT requests that the Estate's Motion for Summary Judgment be denied.

Dated: August 23, 2010       Respectfully Submitted,

                                CIT COMMUNICATIONS FINANCE
                                CORPORATION d/b/a AVAYA FINANCIAL
                                SERVICE

                                By:   /s/ Keith E. Allen
                                       One of its attorneys

Stephen J. Rosenfeld    #6216769
Keith E. Allen   #6271854
Mandell Menkes LLC
333 West Wacker Drive, Suite 300
Chicago, Illinois 60606
312.251.1000

182783                                              15

## CERTIFICATE OF SERVICE

I, Keith E. Allen, an attorney, certify that I have caused to be served a true and correct copy of foregoing *CIT's Response to Trustee's Motion for Summary Judgment on CIT's Request for Administrative Expense* to be delivered via the court's electronic filing system on the 23rd day of August, 2010:

>Patricia Smoots
>Richard Mason
>Paul Catanese
>McGUIREWOODS LLP
>77 West Wacker Drive,
>Suite 4100
>Chicago, Illinois 60601

/s/ Keith E. Allen