# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| marchFIRST, INC., *et al.*, | ) | No.  01 B 24742 |
| | ) | (substantively consolidated) |
| | ) | |
| Debtors. | ) | Judge Goldgar |

## <u>MEMORANDUM OPINION</u>

Three matters are before the court for ruling in the long-running bankruptcy case of marchFirst, Inc. and its affiliates.  They are (1) the motion for summary judgment of chapter 7 trustee Andrew J. Maxwell ("Maxwell") on his supplemental objections to two amended requests for payment of administrative expenses filed by CIT Communications Finance Corporation ("CIT"), (2) CIT's cross-motion for summary judgment on its amended requests, and (3) CIT's motion to compel payment of both its original and amended requests.  In its amended requests, CIT asks to be compensated for millions of dollars in telecommunications equipment it leased to some of the debtors, equipment it says Maxwell never returned.  Maxwell objects to the amended requests on two grounds: (1) the amended requests are untimely; and (2) the amended requests are barred under the doctrine of claim preclusion.

Maxwell is right on both grounds.  His supplemental objections will therefore be sustained, and his motion for summary judgment will be granted.  CIT's cross-motion for summary judgment on the amended requests will be denied, and the motion to compel payment will be denied to the extent it relates to the amended requests.[1]

---

[1]    CIT's cross-motion for summary judgment on the amended requests is actually part of a larger motion in which CIT sought summary judgment not only on the amended requests but also on its pre-petition claims and on the original administrative expense requests. The other portions of CIT's motion were denied on March 7, 2011.  (Btcy. Dkt. No. 4801).

## 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(b)

and the district court's Internal Operating Procedure 15(a). This is a core proceeding pursuant to

28 U.S.C. §§ 157(b)(2)(A) and (B).

## 2. Facts

The following facts are undisputed.[2] CIT is in the business of leasing

telecommunications equipment (Maxwell L.R. 7056-1 Stmt. ¶ 8; CIT L.R. 7056-2 Resp. ¶ 8) and

leased telecommunications equipment pre-petition to marchFirst and several affiliated entities

(*id.* ¶¶ 12-15).[3] In April 2001, marchFirst and certain of the affiliates filed chapter 11

bankruptcy petitions in Delaware. (*Id.* ¶ 1). The cases were converted to chapter 7 (*id.* ¶ 2),

ordered jointly administered (*id.* ¶ 4), and were transferred to this district (*id.* ¶ 5), where

Maxwell was appointed chapter 7 trustee (*id.* ¶ 7).

Maxwell did not assume or reject the CIT leases, and accordingly they were deemed

---

[2]    These facts are drawn from Maxwell's statement in support of his motion because
CIT does not dispute them. In responding to Maxwell's statement, CIT quarrels occasionally
with Maxwell's description of the procedural history of the case. CIT also submits its own
statement of additional facts in opposition to Maxwell's motion (and a statement of facts in
support of its cross-motion) in which CIT sets out the same procedural history with CIT's own
"spin." (*See* CIT L.R. 7056-1 Stmt. ¶¶ 119-26; CIT L.R. 7056-2 Stmt. ¶¶ 6, 25-30, 34-36). But
the parties' characterizations of the case's procedural history are immaterial: the court has
available to it stipulated copies of all the relevant documents – the administrative expense
requests, the adversary complaint, the assorted judicial decisions – and can decide for itself what
the documents say. CIT's statements of fact also go into some detail about CIT's efforts to
retrieve its missing equipment. (*See* CIT L.R. 7056-1 Stmt. ¶¶ 100-18; CIT L.R. 7056-2 Stmt. ¶¶
8-24). Given the procedural nature of the issues here, CIT's dealings with Maxwell concerning
the missing equipment are likewise immaterial.

[3]    CIT quibbles about the specific leases involved here and the names of some of the
lessees (*see, e.g.,* CIT L.R. 7056-2 Resp. ¶ 13), but CIT has not explained why these details are
material to a dispute that depends, in the end, on the timing of its amended requests.

rejected under section 365(d)(1) of the Bankruptcy Code, 11 U.S.C. § 365(d)(1), on June 27, 2001. (Maxwell L.R. 7056-1 Stmt. ¶ 16; CIT L.R. 7056-2 Resp. ¶ 16). In August 2001, the court set October 11, 2001, as the deadline for holders of claims arising from the rejection of unexpired leases or executory contracts to file proofs of claim. (*Id.* ¶ 19). The court set the same date as the deadline for lessors under rejected leases who sought payment of administrative expenses to file requests for payment. (*Id.* ¶ 18).

### a. CIT's Claims and Administrative Expense Requests

On October 10, 2001, CIT filed two proofs of claim for damages arising from the rejection of the leases, one for $1,437,024, the other for $4,853,333. (*Id.* ¶ 20 & Exs. I, J). Both claims sought amounts due under the leases pre-petition as well as remaining contract balances and something called "equipment residual." (*Id.* ¶ 21 & Exs. I, J).

The next day, CIT filed two requests for allowance and payment of administrative expenses. (Maxwell L.R. 7056-1 Stmt. ¶ 23; CIT L.R. 7056-2 Resp. ¶ 23). In the requests, CIT asserted that the estate had continued to use the leased equipment post-petition and sought rent and other costs and charges ($81,546 in one request, 380,411 in the other) from the petition date through October 1, 2001. (*Id.* ¶¶ 24-25 & Exs. K, L).

On November 30, 2001, Maxwell filed an omnibus objection to administrative claims. (*Id.* ¶ 26; *see* Btcy. Dkt. No. 497). Among the claims to which Maxwell objected were CIT's two requests for allowance and payment of administrative expenses. (Maxwell L.R. 7056-1 Stmt. ¶ 26; CIT L.R. 7056-2 Resp. ¶ 26).

On December 10, 2002, more than year after the bar date, CIT filed an "Amendment to Request for Allowance and Payment of Administrative Expenses." (*Id.* ¶ 27). The

"Amendment" document asserted that Maxwell had "breached his fiduciary duty to gather, administer and turnover some of the [e]quipment" subject to certain leases. (*Id.* Ex. M). CIT sought $1,181,989 in administrative expenses for the value of what CIT called "the converted equipment." (*Id.* ¶ 27 & Ex. M). The same day, CIT also filed an "Amended Request for Allowance and Payment of Administrative Expenses." (*Id.* ¶ 28 & Ex. N). In the "Amended Request," CIT made the same allegations about Maxwell's breach of fiduciary duty in connection with other leases (*id.* ¶ 29 & Ex. N.) and sought $1,293,767, again consisting of the value of the "converted equipment" (*id.* ¶¶ 28-29).[4] In both amended requests, CIT asserted that it had not learned of Maxwell's alleged breach of fiduciary duty and the conversion of its equipment until after the October 11, 2001 bar date. (*Id.* ¶ 30). However, CIT neither sought nor received leave of court to amend its initial administrative expense requests. (*Id.* ¶ 29).

On February 18, 2003, Maxwell objected to CIT's amended administrative expense requests. (*Id.* ¶ 31 & Ex. O; *see* Btcy. Dkt. No. 1154). Among other things, Maxwell asserted that the requests were untimely. (Maxwell L.R. 7056-1 Stmt. ¶ 31 & Ex. O, ¶ 1).

There things sat for the next four years. For reasons the record does not reveal, the court held no hearings and made no rulings on the pending requests and objections.[5] Neither CIT nor Maxwell saw fit to bring matters to a head.

---

[4]    The "Amended Request" concerned not only a lease mentioned in one of the original requests but two other leases with marchFirst affiliates (Cybernautics, Inc. and CKS Partners, Inc.) (Maxwell L.R. 7056-1 Stmt. Ex. N, ¶ 1 n.1) although CIT had never before requested administrative expenses with respect to those leases.

[5]    At the time, the bankruptcy case was assigned to another judge. The case was later reassigned.

### b. CIT's Adversary Proceeding

CIT broke the four-year silence on May 7, 2007, when it suddenly filed an adversary proceeding against Maxwell, both personally and in his capacity as trustee. (Maxwell L.R. 7056-1 Stmt. ¶ 32 & Ex. P; CIT L.R. 7056-2 Resp. ¶ 32).

In its complaint, CIT alleged that it had leased more than $4.7 million in telephone equipment to marchFirst and the other debtors, equipment placed in offices across the country. (Maxwell L.R. 7056-1 Stmt. Ex. P, ¶¶ 6-8). CIT further alleged that Maxwell as trustee had an obligation to insure and safeguard property that came into his hands. (*Id.* Ex. P, ¶ 11). Despite this obligation, CIT said, Maxwell failed to inventory or secure CIT's equipment, failed to investigate the estate's interest in the leased property, filed a false Statement of Financial Affairs that said the debtors held no property owned by another person (although he knew the opposite was true), ignored CIT's requests for the return of the equipment, and even affirmatively resisted CIT's efforts to recover it. (*Id.* Ex. P, ¶¶ 11-13, 17-21, 28).

CIT's complaint had four counts. Counts I and II were claims for breach of fiduciary duty against Maxwell in his personal and official capacities, respectively. Count III was a claim against Maxwell in his personal capacity for "ultra vires activities." Count IV was a claim against Maxwell in his official capacity for "constructive bailment." (*Id.* Ex. P at 5-9). In each count, CIT sought damages of $3,655,713 (the value of the lost equipment, almost $1.2 million more than the amount sought in the amended administrative expense requests), as well as costs CIT allegedly incurred in attempting to recover the equipment and lost profits resulting from its inability to re-lease the equipment. (*Id.*).

Maxwell moved to dismiss the complaint (Maxwell L.R. 7056-1 Stmt. ¶ 35; CIT L.R.

7056-2 Resp. ¶ 35), and in November 2007, the bankruptcy court granted the motion (*id.* ¶ 36).

In its memorandum opinion, the court declined to decide whether CIT had a prima facie case

against Maxwell under the *Barton* doctrine, *see Barton v. Barbour*, 104 U.S. 126, 127 (1881)

(holding that permission of the court must be obtained before a receiver can be sued), concluding

instead that the action was barred by the applicable statute of limitations. (Maxwell L.R. 7056-1

Stmt. Ex. Q at 6). The applicable limitations period, the court said, was the five-year period

under Illinois law governing actions for damages arising out of an injury to personal property.

(*Id.* Ex. Q at 7). CIT knew of its claim no later than November 2, 2001, when Maxwell filed the

Statement of Financial Affairs disclosing that the debtors held no leased equipment, and perhaps

as early as July 20, 2001, when Maxwell allegedly failed to return the equipment. Either way,

the court held, the limitations period ran well before the May 2007 filing date, and the action was

barred. (*Id.* Ex. Q at 8-9).

CIT appealed the dismissal to the district court, but the district court affirmed the

bankruptcy court's decision. (Maxwell L.R. 7056-1 Stmt. ¶¶ 38, 40; CIT L.R. 7056-2 Resp. ¶¶

38, 40). In its opinion, the district court did the bankruptcy court one better, holding that CIT not

only should have known of its injury no later than the filing of the Statement of Financial Affairs

but should have known of it as early as June 26, 2001, when the leases were rejected but the

equipment not returned. (Maxwell L.R. 7056-1 Stmt. Ex. T at 7).

Again CIT appealed, but the court of appeals affirmed the judgment of the district court.

*See In re marchFirst Inc.*, 589 F.3d 901, 904 (7th Cir. 2009) (holding that "CIT's claims . . . are

barred by the statute of limitations"). The court noted that "all activity" alleged in the adversary

complaint "relating to CIT's efforts to recover its equipment and Maxwell's lack of response"

-6-

took place in the summer and fall of 2001. *Id.* at 904. "[A]t the very least," the court said, CIT

should have known of its injury when Maxwell filed the Statement of Financial Affairs. *Id.* at

905. Because the adversary complaint was not filed for another "five years and five months,"

CIT's claims were beyond the five-year limitations period and were barred. *Id.*

### c. Further Proceedings in the Bankruptcy Court

While its appeal to the district court was pending, CIT filed a motion to compel payment

of its administrative claims. (Maxwell L.R. 7056-1 Stmt. ¶ 39; CIT L.R. 7056-2 Resp. ¶ 39; *see*

Btcy. Dkt. No. 3795). After the appeal was decided, Maxwell filed supplemental objections to

CIT's original and amended requests for administrative expenses. (Maxwell L.R. 7056-1 Stmt. ¶

45; CIT L.R. 7056-2 Resp. ¶ 45; *see* Btcy. Dkt. No. 4410). In his supplemental objections,

Maxwell asserted that principles of claim preclusion, issue preclusion, and law of the case barred

the amended requests in whole or in part. (*Id.*). All matters relating to CIT's pre-petition claims

and its administrative expense requests were subsequently consolidated for all purposes. (Btcy.

Dkt. No. 4434).

Maxwell has moved for summary judgment on his supplemental objections to CIT's

amended administrative expense requests. CIT has cross-moved for summary judgment on those

requests and moved to compel payment. The motions are fully briefed and ready for decision.

### 3. Discussion

Maxwell's motion for summary judgment on the amended requests will be granted and

CIT's motions denied. CIT's amended requests are untimely, filed long after the bar date. But

even if they had been timely, the doctrine of claim preclusion would bar them because CIT

brought – and lost – an adversary proceeding asserting the same claim.

### a. Untimely Requests

CIT's amended administrative expense requests are untimely.  CIT filed the amended requests after the applicable bar date, and they do not relate back to CIT's original requests.

Section 503(a) of the Code provides that "[a]n entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause." 11 U.S.C. § 503(a).  This section implicitly confers on bankruptcy courts the power to set deadlines for the filing of administrative expense requests. *In re DP Partners L.P.*, 106 F.3d 667, 672 (5th Cir. 1997); *In re Cypresswood Land Partners I*, 410 B.R. 247, 257 (Bankr. S.D. Tex. 2009); *In re Atcall, Inc.*, 284 B.R. 791, 798 (Bankr. E.D. Va. 2002); *In re Gurley*, 235 B.R. 626, 631-32 (Bankr. W.D. Tenn. 1999); 4 *Collier on Bankruptcy* ¶ 503.02[2] at 503-10 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010); *cf. In re PT-1 Commc'ns, Inc.*, 403 B.R. 250, 259 (Bankr. E.D.N.Y. 2009) (stating that the power comes from section 105).

Whether for proofs of claim or requests for administrative expenses, bar dates serve the salutary purpose of finality. *PT-1 Commc'ns*, 403 B.R. at 259 (noting that claims and administrative expense bar dates promote "finality and [in a chapter 11 case] debtor rehabilitation") (internal quotation omitted).  Once the claims and requests are filed, parties can "concentrate on determining their validity and providing for payment." *Holstein v. Brill*, 987 F.2d 1268, 1270 (7th Cir. 1993).  Allowing administrative expense requests to be filed at any time defeats finality, making it impossible to determine the obligations of the debtor, 9 *Collier on Bankruptcy*, *supra*, ¶ 3003.03[4] at 3003-8 (discussing bar dates for claims), and "undermining the institutional means of ensuring the sound administration of the bankruptcy estate," *PT-1*

*Commc'ns*, 403 B.R. at 259 (internal quotation omitted).

In this case, CIT filed its amended requests well after the bar date. The bar date for lessors under rejected leases to request payment of administrative expenses was October 11, 2001. (Maxwell L.R. 7056-1 Stmt. ¶ 18; CIT L.R. 7056-2 Resp. ¶ 18). CIT's amended requests were not filed until December 10, 2002, over a year later. (*Id.* ¶¶ 27-28). The requests were therefore not "timely file[d]" under section 503(a). 11 U.S.C. § 503(a). And although section 503(a) permits "tardily file[d]" requests "if permitted by the court for cause," *id.*, CIT showed no cause for permitting the late-filed amended requests.[6] Indeed, CIT never sought permission to file tardy claims for "cause," despite the passage of nine years since the bar date and more than eight years since CIT filed the amended requests. The amended requests are therefore barred.

CIT, though, does not contend the amended requests were new and "tardily file[d]." According to CIT, the amended requests were just that: amended versions of the original requests timely filed on October 11, 2001. The amended requests, CIT argues, "relate back" to the timely-filed requests. (CIT Mem. at 12).

They do not. Amendments to claims are analyzed under Rule 15, which applies in

---

[6]      What constitutes "cause" to file a tardy request under section 503(a) is unclear. The term is not defined in the Code but appears to be "intentionally vague and broad," *DP Partners*, 106 F.3d at 672, allowing bankruptcy courts the "widest possible discretion," *In re Heartland Steel, Inc.*, No. 1:03-CV-802-DFH, 2003 WL 23100035, at *3 (S.D. Ind. Dec. 16, 2003) (Hamilton, J.). Courts considering late administrative expense requests often resort to the "excusable neglect" standard in Rule 9006(b)(1), Fed. R. Bankr. P. 9006(b)(1). *See, e.g., PT-1 Commc'ns*, 403 B.R. at 259-60; *In re Bridgeview Aerosol, LLC*, No. 09 B 41021, 2010 WL 2465401, at *2 (Bankr. N.D. Ill. June 16, 2010). One court, however, has held that "excusable neglect" is a "distinctly different and somewhat narrower" standard than "cause" and should not be used. *Heartland Steel, Inc.*, 2003 WL 23100035, at *3. At least one court has held that either standard may be used. *See In re West Delta Oil Co.*, No. Civ. 01-1163, 2002 WL 506814, at *4 (E.D. La. March 28, 2002).

bankruptcy through Bankruptcy Rule 7015. *See Holstein*, 987 F.2d at 1270.[2/] For an amended

claim to relate back under Rule 15(c)(1)(B), it must assert "a claim . . . that arose out of the

conduct, transaction, or occurrence set out – or attempted to be set out – in the original [claim]."

Fed. R. Civ. P. 15(c)(1)(B). In other words, the claim must be "sufficiently linked" to the

original. *Disch v. Rasmussen*, 417 F.3d 769, 776 (7th Cir. 2005). A sufficient link exists when

the amended claim "asserts a new claim on the basis of the same core of facts." *Bularz v.*

*Prudential Ins. Co.*, 93 F.3d 372, 379 (7th Cir. 1996); *see also Newell v. Hanks*, 283 F.3d 827,

834 (7th Cir. 2002) (noting that an amended complaint must be "based on the same core of facts

advanced in the original"). If "the factual situation upon which the [claim] depends remains the

same" and has been brought to the parties' attention by the original, the amended claim will be

timely. *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001).

This test is obviously not satisfied here. CIT's original requests seek $461,958 in "rent

and other costs and charges" from the estate's use of the equipment. (Maxwell L.R. 7056-1

Stmt. ¶ 25 & Exs. K, L; CIT L.R. 7056-2 Resp. ¶ 25). CIT's amended requests seek $2,475,756,

more than five times as much, for the value of equipment "converted" through Maxwell's alleged

breach of his fiduciary duty. (*Id.* ¶¶ 27-28 & Exs. M, N). The original and amended requests

arise out of entirely different conduct at entirely different times – Maxwell's use of the

equipment on the one hand, his subsequent loss of the equipment on the other – and for vastly

different sums. CIT's contention that its amended requests merely assert "a new theory of

---

[2/]    Many courts have addressed post-bar date amendments to proofs of claim under
Rule 15. *See generally Maxwell v. Novell, Inc. (In re marchFirst, Inc.)*, 431 B.R. 436, 443 &
n.11 (Bankr. N.D. Ill. 2010). Fewer courts have addressed post-bar date amendments to
administrative expense requests. Those that have done so, however, have analyzed them under
Rule 15 as well. *See, e.g., In re UAL Corp.*, No. 02 B 48191, 2009 WL 4068023, at *5 n.6
(Bankr. N.D. Ill. Nov. 24, 2009).

recovery on the lease transactions set forth in the original [requests]" (CIT Mem. at 12) cannot be taken seriously. Nothing in the original claims would put Maxwell on notice that CIT wants damages for the conversion of its equipment. The amended requests do not grow out of the "same core of facts," *Newell*, 283 F.3d at 834, are not "sufficiently linked" to the originals, *Disch*, 417 F.3d at 776, and do not relate back to them.

CIT next argues that even if the amended requests do not relate back to the originals, they at least relate back to "informal proofs of claim[ ]" CIT made for the equipment. (CIT Mem. at 14). The "informal claims" are said to be e-mail messages CIT sent to Maxwell's counsel identifying the equipment and a limited objection CIT filed to the sale of certain assets. (*Id.*).

This argument is dubious for two reasons. First, an administrative expense request is not a "claim" and so is "not properly asserted in a proof of claim." 4 *Collier on Bankruptcy, supra,* ¶ 503.02[1] at 503-9 (noting that "the filing of [a] proof of claim is unnecessary to request payment of an administrative expense"). Because an administrative expense request is not asserted in a proof of claim, it is by no means evident that the "informal proof of claim" doctrine CIT invokes applies to administrative expense requests, resulting in something called an "informal administrative expense request." CIT cites no authority establishing such a creature, and no court appears ever to have held there is one.

Second, the materials on which CIT relies would not qualify as informal proofs of claim in any event. The "informal proof of claim" doctrine in this circuit is narrow. Because the doctrine is equitable in origin, *see In re Fink*, 366 B.R. 870, 873 (Bankr. N.D. Ind. 2007), and because *In re Greenig*, 152 F.3d 631, 635 (7th Cir. 1998), holds that bankruptcy courts have no equitable powers to allow late proofs of claim except in the circumstances specifically set forth in

-11-

the Rules, it could be argued that there is no such thing as an informal proof of claim, *see Fink*, 366 B.R. at 873. Other decisions, however, acknowledge the doctrine's viability, *see, e.g., In re marchFirst Inc.*, 573 F.3d 414, 416-17 (7th Cir. 2009); *In re Boone Cnty. Utils., LLC*, 506 F.3d 541, 544-45 (7th Cir. 2007), and the inconsistent case law has led bankruptcy courts to find that, if nothing else, the doctrine should be "tethered rather closely to its roots." *Fink*, 366 B.R. at 876 (internal quotation omitted). The doctrine thus applies only when a creditor timely files a document that is meant as a proof of claim but is somehow defective or incomplete. *In re Shanks*, No. 10-1920-AJM-13, 2011 WL 721632, at *2-3 (Bankr. S.D. Ind. Feb. 22, 2011); *In re Brooks*, 370 B.R. 194, 204 (Bankr. C.D. Ill. 2007); *Fink*, 366 B.R. at 876-77.

CIT's e-mail message (there was only one) identifying the equipment and its location and asking about its return was not intended as a claim against the marchFirst estate. The message did not demand any form of payment and was never filed with the court – at least not for that purpose. (CIT L.R. 7056-2 Stmt. ¶ 19 & Ex. 113 to Ex. G). The message was private correspondence, no more. As for CIT's limited sale objection, the objection was filed with the court and even made a demand of sorts for payment (since it objected to the sale without payment of "all the cure amounts for the [l]eases" necessary for the leases' assumption. (Maxwell L.R. 7056-1(C) Reply, Ex. 9 at 2). But the objection was not intended as a demand for payment arising out of the loss of CIT's equipment; it sought payment of another kind (and then only on the condition that the leases were assumed, something that never happened). In no respect could the objection be considered a "defective or incomplete" version of the amended requests not filed with the court for another eighteen months. *Brooks*, 370 B.R. at 204.[8] Neither

---

[8]   The limited objection was filed on June 13, 2001, when the case was still pending in Delaware. (Maxwell L.R. 7056-1 Stmt. Ex. A at 31). The amended requests were not filed

the e-mail message nor the limited sale objection is an "informal claim" to which the amended requests relate back.

As its last gasp, CIT contends that Maxwell contributed to its delay in filing the amended requests. (CIT Mem. at 13). CIT asserts that in February 2002, Maxwell agreed that he would assist with the return of the equipment, and it was not until "at least late 2002" that CIT could have known it had a "lost equipment claim." (*Id.*).[9] Hidden away in one paragraph of CIT's discussion is the statement that Maxwell's conduct requires the court to "equitably extend the time to file a proof of claim." (*Id.*).

Whether CIT intends this statement as some sort of exceptionally late – more than nine years post-bar date – motion for leave to file the amended requests is unclear. Motions are generally not made part of summary judgment memoranda. Moreover, the time to file a "proof of claim" cannot be extended on purely equitable grounds. *Greenig*, 152 F.3d at 635. And although an administrative expense request is not a claim, 4 *Collier on Bankruptcy, supra*, ¶ 503.02[1] at 503-9, the grounds for allowing a late administrative expense request are limited to "cause" under section 503(a), 11 U.S.C. § 503(a), and possibly "excusable neglect" under Rule 9006(b)(1), Fed. R. Bankr. P. 9006(b)(1); *see* discussion, *supra*, at 9 n.6. CIT cites neither the Code section nor the Rule and does not tailor its argument to either one.

Piecing together what CIT wants and whether there is some legal basis for it turns out to be unnecessary, however, because CIT's factual assertions are not supported with admissible

---

until December 10, 2002. (Maxwell L.R. 7056-1 Stmt. ¶¶ 27-28; CIT L.R. 7056-2 Resp. ¶¶ 27-28).

[9]      If true, this assertion would confirm that the e-mail message to Maxwell's counsel and the limited sale objection, both from 2001, had nothing to do with payment for lost equipment.

evidence as they must be. *See Tindle v. Pulte Home Corp.*, 607 F.3d 494, 496 (7th Cir. 2010).

CIT depends for its version of events on a 2003 affidavit of Derek J. Baker, its former counsel.

(CIT L.R. 7056-2 Stmt. ¶¶ 21-24 & Ex. H). Baker's affidavit fails to specify when and where

conversations and meetings occurred, who participated in the conversations, and who attended

the meetings. It lacks the foundation to be admissible. *See United States v. Freeman*, No. 07 CR

843, 2009 WL 2748483, at *11 (N.D. Ill. Aug. 26, 2009) (noting that under "basic principles of

evidence" a "proper foundation for a conversation must include information as to *when* and

*where* the conversation occurred, who was present, and who said what to whom") (emphasis in

original).[10/]

     CIT's insistence that it could not have filed the amended requests until late 2002 at the

earliest also contradicts the decisions of the bankruptcy court, district court, and court of appeals

in CIT's adversary proceeding. All three courts concluded that CIT knew its equipment had been

lost no later than November 2001 (less than a month after the bar date) and perhaps as early as

June or July 2001 (several months before it). (*See* Maxwell L.R. 7056-1 Stmt. Ex. Q at 8-9, Ex.

T at 7, Ex. V at 5-6). These decisions arguably have at least issue preclusive effect, ruling out

CIT's "late 2002 date," (CIT Mem. at 13). *See generally Dexia Credit Local v. Rogan*, 629 F.3d

612, 628 (7th Cir. 2010) (discussing elements of issue preclusion).

     In sum, CIT's amended administrative expense requests were filed after the bar date, they

---

    [10/]    Even if the affidavit were admissible, at a later deposition Baker denied having
any recollection of the matters in the affidavit. (*See* Maxwell L.R. 7056-1(C) Reply, Ex. 7 at
123-24). A witness's deposition trumps his earlier, inconsistent affidavit, *Darnell v. Target
Stores*, 16 F.3d 174, 177 (7th Cir. 1994), and an affidavit in which the witness purports to have
knowledge he later disclaims at his deposition has little probative value, *Harris v. Owens-
Corning Fiberglas Corp.*, 102 F.3d 1429, 1432 (7th Cir. 1996); *Wallace v. City of Tarpon
Springs*, No. 8:05-CV-979-T-EAJ, 2007 WL 128836, at *9 n.10 (M.D. Fla. Jan. 12, 2007).

do not relate back to the original requests, and there is no basis for allowing CIT to file them now

(assuming CIT is asking to file them). The amended requests are therefore untimely and are

barred. Maxwell's motion for summary judgment on the amended requests will be granted.

### b. Claim Preclusion

Maxwell would be entitled to summary judgment even if CIT's amended requests had

been timely. The final judgment against CIT in the adversary proceeding alleging claims against

Maxwell arising out of the loss of its equipment bars CIT from alleging the same loss and

seeking compensation for it as an administrative expense.

Under the doctrine of claim preclusion, "'a final judgment on the merits of an action

precludes the parties or their privies from relitigating issues that were or could have been raised

in that action.'" *Highway J Citizens Grp. v. U.S. Dep't of Transp.*, 456 F.3d 734, 741 (7th Cir.

2006) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). The doctrine protects against "the

expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters

reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v.

United States*, 440 U.S. 147, 153-54 (1979). It also reflects the fundamental policy "that there be

an end to litigation," *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401-02 (1981)

(internal quotation omitted), a policy that is "particularly strong in the bankruptcy context,"

*Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 180 (7th Cir. 1994).

Claim preclusion under federal law has three elements: (1) an identity of the parties or

their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits.

*Czarniecki v. City of Chicago*, 633 F.3d 545, 548 (7th Cir. 2011); *United States ex rel. Lusby v.

Rolls-Royce Corp.*, 570 F.3d 849, 851 (7th Cir. 2009); *Ross ex rel. Ross v. Board of Educ. of*

*Twp. H.S. Dist. 211*, 486 F.3d 279, 283 (7th Cir. 2007); *Highway J Citizens Grp.*, 456 F.3d at

741; *Maher v. Federal Deposit Ins. Corp.*, 441 F.3d 522, 526 (7th Cir. 2006).[11/]  Each of these

elements is met here.

### i. Identity of Parties

First, there is an identity of parties.  Both CIT and Maxwell were plainly parties to CIT's

adversary proceeding.  CIT was the plaintiff; Maxwell was the defendant.  Both CIT and

Maxwell are also parties to the contested matter arising out of the amended administrative

expense requests.  CIT filed the amended requests and is the creditor requesting payment.

Maxwell is the party objecting to the amended requests.

Identity of the parties may be absent when a person participates in two matters in different

capacities, 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice &

Procedure* § 4448 at 327 (2d ed. 2002), but in both matters here Maxwell participated in the

same capacity: as chapter 7 trustee.  CIT's adversary proceeding against Maxwell sought

damages for negligence he allegedly committed in his official capacity as trustee.  (*See* Maxwell

---

[11/]      Whether federal or state claim preclusion standards apply here is a potentially
difficult question.  The preclusive effect of a federal judgment is determined by federal common
law.  *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008); *Semtek Int'l Inc. v. Lockheed Martin Corp.*,
531 U.S. 497, 507-08 (2001).  Under federal common law, federal standards apply to a judgment
on a federal claim, *Semtek*, 531 U.S. at 507, and state standards apply to a judgment on a state
law claim in a diversity case, *id.* at 507-08.  What standard applies when the judgment is on a
state law claim in a bankruptcy case, however, is a question no post-*Semtek* decision appears to
answer.  Fortunately, the question need not be answered in this case.  CIT contends that federal
preclusion standards govern the outcome here.  (CIT Mem. at 3 n.1).  Maxwell contends it makes
no difference: federal and Illinois preclusion standards are the same, and he wins either way.
(Maxwell Mem. at 7 n.8).  With the parties content to apply federal law, federal law applies.
*Allan Block Corp. v. County Materials Corp.*, 512 F.3d 912, 915 (7th Cir. 2008) (applying
federal preclusion standards because the parties agreed to federal standards and "parties are free
to choose (within reason) whatever body of law they want to govern a litigation").

L.R. 7056-1 Stmt. Ex. P at 1, 7-8, 9-10). A negligence claim against a chapter 7 trustee is an

official capacity claim. *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 461 (6th Cir. 1982);

*Sherr v. Winkler*, 552 F.2d 1367, 1375 (10th Cir. 1977).[12] Maxwell also objected to CIT's

amended administrative expense requests in his capacity as trustee. *See* 11 U.S.C. § 323(a) (the

trustee is the representative of the estate); *In re Lloyd*, 37 F.3d 271, 275 (7th Cir. 1994); *In re L*

*& S Indus., Inc.*, 989 F.2d 929, 934 (7th Cir. 1993). Maxwell as trustee was CIT's opponent in

the adversary proceeding, and as trustee he is CIT's opponent on the amended requests.

In arguing otherwise, CIT does not deny that it was a party both to the adversary

proceeding and to the administrative expense requests. CIT insists, however, that Maxwell was a

party to the adversary proceeding but "the Estate" is the opposing party in the contested matter.

(CIT Mem. at 7). CIT forgets that the trustee is the representative of the estate, 11 U.S.C. §

323(a), that a bankruptcy estate acts only through its trustee, *Levin v. Barker*, 122 F.2d 969, 971

(8th Cir. 1941); *In re The Colony Place Co.*, No. 88-10819, 1989 WL 1113439, at *1 (Bankr.

S.D. Ga. Sept. 15, 1989), and that the trustee, no one else, has the capacity to sue and be sued on

behalf of the estate, 11 U.S.C. § 323(b). Maxwell as trustee is the representative of the estate

here. The contested matter is contested only because Maxwell as trustee has objected to the

amended requests. Maxwell is as much a party to the contested matter as he was to the adversary

proceeding.[13]

_____

    [12]    The Seventh Circuit has reached the same conclusion by implication, holding that
a chapter 7 trustee is "personally liable only if he willfully and deliberately violated his fiduciary
duties." *Maxwell v. KPMG LLP*, No. 07-2819, 2008 WL 6140730, at *4 (7th Cir. Aug. 19,
2008); *see also In re Chicago Pac. Corp.*, 773 F.2d 909, 915 (7th Cir. 1985).

    [13]    Both CIT's adversary complaint and its amended administrative expense requests
also sought payment from the same source: the estate. A claim against a chapter 7 trustee in his
official capacity seeks recovery from the estate. *Robinson v. Michigan Consolidated Gas Co.*,

CIT next contends that the adversary proceeding only sought to hold Maxwell personally liable. (CIT Mem. at 7). According to CIT, its claims for breach of fiduciary duty were official capacity claims because a breach of fiduciary duty claim is always an official capacity claim, whether or not the trustee will be personally liable.

CIT is mistaken. An official capacity claim *by definition* is a claim against the estate, not the trustee personally. *See Robinson*, 918 F.2d at 584; *In re Ridley Owens*, 391 B.R. 867, 870 (Bankr. N.D. Fla. 2008); *Markos Gurnee*, 182 B.R. at 215. Moreover, CIT's characterization of its adversary complaint as asserting only claims against Maxwell personally is impossible to square with the structure and wording of the document itself. As Maxwell notes, the complaint alleged *two* fiduciary duty claims. Count I was a claim against Maxwell "in his personal capacity." (Maxwell L.R. 7056 Stmt. Ex. P at 5). Count II was a separate claim against Maxwell "in his capacity as chapter 7 trustee." (*Id.* at 7-8). In addition, Count IV sought to hold Maxwell liable "in his capacity as chapter 7 trustee" on a negligent bailment theory. (*Id.* at 9-10). The nature of CIT's claims is readily apparent. No amount of reinterpretation can transform the official capacity claims into claims against Maxwell personally.

Finally, CIT argues that Maxwell himself understood that the adversary proceeding had been brought against him in his personal capacity because he hired his own defense counsel and paid for them himself. (CIT Mem. at 7-8). But there is no question that CIT sued Maxwell personally. The point is that CIT also sued Maxwell in his official capacity as trustee, making

918 F.2d 579, 584 (6th Cir. 1990); *In re Weisser Eyecare, Inc.*, 245 B.R. 844, 848 (Bankr. N.D. Ill. 2000); *Schechter v. Illinois Dep't of Revenue (In re Markos Gurnee P'ship)*, 182 B.R. 211, 215 (Bankr. N.D. Ill. 1995). An administrative expense request likewise seeks payment from the estate. *See In re Grimland, Inc.*, 243 F.3d 228, 233 (5th Cir. 2001) (noting that the "default rule in bankruptcy is that administrative expenses are paid out of the estate"); *Ford Motor Credit Co. v. Reynolds & Reynolds Co. (In re JKJ Chevrolet, Inc.)*, 26 F.3d 481, 483 (4th Cir. 1994) (same).

Maxwell as representative of the estate CIT's opposing party in the adversary proceeding as well as in the contested matter. CIT cites no authority for the theory that Maxwell's choice of counsel in the adversary proceeding can contradict the plain meaning of CIT's complaint, turning official capacity claims into something else.

Because CIT and Maxwell in his capacity as trustee were parties to the adversary proceeding and are also parties to the current contested matter, the identity-of-parties element of claim preclusion is satisfied.

### ii. Identity of Causes of Action

The second element, identity of causes of action, is also satisfied. There is "no formalistic test" for determining whether causes of action are identical. *Ross*, 486 F.3d at 284. A claim in one matter is identical to the claim in another previously litigated matter if the claims arise out of "the same core of operative facts." *Highway J Citizens Grp.*, 456 F.3d at 741 (internal quotation omitted). Causes of action are said to be identical as long as they arise "from the same transaction (identified by its 'operative facts')." *Lusby*, 570 F.3d at 851. Put another way, "'a subsequent suit is barred if the claim on which it is based arises from the same incident, events, transaction, circumstances, or other factual nebula as a prior suit that had gone to final judgment.'" *Cole v. Board of Trustees of Univ. of Ill.*, 497 F.3d 770, 773 (7th Cir. 2007) (quoting *Okoro v. Bohman*, 164 F.3d 1059, 1062 (7th Cir. 1999)).

CIT's adversary proceeding and its amended administrative expense requests assert identical claims because both are based on Maxwell's post-petition loss of CIT's equipment. CIT's amended requests allege that Maxwell had a duty to gather, administer, and turnover CIT's equipment, and that he breached that duty, causing CIT the loss of its "converted equipment."

-19-

(Maxwell L.R. 7056 Stmt. Exs. M, N).  CIT's adversary complaint similarly alleged that

Maxwell had a duty to gather and preserve estate property, including CIT's equipment, and that

he breached that duty.  (*Id.* Ex. P).  In both instances, CIT also sought the same or similar relief:

compensation equivalent to the value of its missing equipment.  (Maxwell L.R. 7056-1 Stmt. Ex.

M, ¶¶ 6-8; Ex. N, ¶¶ 6-8; Ex. P at 7-10).  *See Highway J Citizens Grp.*, 456 F.3d at 742 (noting

that "the relief requested . . . ought to be given significant weight" in determining identity of

causes of action).  CIT's claims unquestionably grew out of the same "incident, events,

transaction, circumstances, or other factual nebula."  *Cole*, 497 F.3d at 773 (internal quotation

omitted).

    CIT tries without success to draw distinctions between the claims.  CIT argues that the

adversary proceeding focused on Maxwell's intentional efforts to prevent CIT from recovering

its equipment, whereas the amended requests focus on the estate's loss of the equipment because

of Maxwell's negligence (and the negligence of his Delaware predecessor, Michael B. Joseph).

(CIT Mem. at 4-5).  As such, CIT suggests, "the wrongful events are separated by time and

function."  *Perkins v. Board of Trustees of Univ. of Ill.*, 116 F.3d 235, 237 (7th Cir. 1997).

    This again is so much reinterpretation of the amended requests and the complaint.  The

amended requests assert only that Maxwell "breached his fiduciary duty" and say nothing about

negligence as opposed to intent.  (Maxwell L.R. 7056-1 Stmt. Exs. M, N).  The adversary

complaint, meanwhile, alleged on its face not just Maxwell's negligence but his intentional acts

as well.  (*Id.* Ex. P at 6-7).  As for events supposedly involving Joseph rather than Maxwell, the

amended requests never mention Joseph at all, asserting only Maxwell's breach of duty.  (*Id.*

Exs. M, N).  CIT concedes as much.  (CIT Mem. at 5 n.3).

More important than these kinds of details, both CIT's complaint and its amended requests arise out of the loss of CIT's equipment, something CIT does not deny. The loss of the equipment is the critical event, the relevant transaction, the core of operative facts common to both the complaint and the amended requests. That the complaint and amended requests may not be congruent down to the last comma is beside the point. *See Ross*, 486 F.3d at 283 (holding that the fact two actions "differ[ed] in some respects, including the legal theories . . . advanc[ed]," was not enough to avoid a finding they relied "on the same fundamental transaction or series of transactions"); *see also Czarniecki*, 633 F.3d at 549-50; *Cole*, 497 F.3d at 773-74 (noting that complaints alleging "roughly the same series of events" asserted claims identical for purposes of claim preclusion); *Highway J Citizens Grp.*, 456 F.3d at 741-42.

Because CIT's adversary complaint and its administrative expense requests depend on "the same core of operative facts," *Highway J Citizens Grp.*, 456 F.3d at 741 (internal quotation omitted), CIT's causes of action are identical.

### iii.  Finality of Judgment

The third element of claim preclusion, a final judgment, is satisfied as well. Finality for purposes of claim preclusion (as opposed to issue preclusion) generally means finality for purposes of appellate review. *Ross*, 486 F.3d at 284 (noting that a "final judgment for purposes of 28 U.S.C. § 1291" is "normally enough to assure finality for preclusion purposes also"); *see also* 18A Wright, Miller & Cooper, *supra*, § 4434 at 128. Reduced to its essence, finality for appeal depends simply on "whether the district court 'has finished with the case.'" *Czarniecki*, 633 F.3d at 549 (quoting *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1097 (7th Cir. 2008) (internal quotation omitted)). Since the "normal rules" of claim preclusion

"apply to the decisions of bankruptcy courts," *Katchen v. Landy*, 382 U.S. 323, 334 (1966),

judgments that conclude adversary proceedings have preclusive effect, *Rhode Island Hosp. Trust*

*Nat'l Bank v. Bogosian (In re Belmont Realty Corp.)*, 11 F.3d 1092, 1095-96 (1st Cir. 1993).

The bankruptcy court's decision dismissing CIT's adversary proceeding was a final

judgment. The adversary proceeding was dismissed because it was barred by the statute of

limitations. (Maxwell L.R. 7056-1 Stmt. Ex. Q at 6, 10). A dismissal on statute of limitations

grounds is a final judgment with preclusive effect. *Smalls v. United States*, 471 F.3d 186, 192

(D.C. Cir. 2006); *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d

1064, 1081 (9th Cir. 2003); *Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir. 1996); 18A Wright,

Miller & Cooper, *supra*, § 4441 at 213. For that matter, CIT treated the bankruptcy court's

decision as final, appealing it first to the district court (which affirmed) and then to the court of

appeals (which also affirmed).[14] (Maxwell L.R. 7056-1 Stmt. Exs. T, V). No certiorari petition

was filed. The judgment, then, is about as final as it gets. CIT is in no position to suggest

otherwise.

Nonetheless, CIT does suggest otherwise, arguing there is no final judgment here because

a "dismissal for lack of jurisdiction is not on the merits." (CIT Mem. at 9). The judgment was

jurisdictional, CIT suggests, because the bankruptcy court ruled that CIT had failed to request

permission to sue Maxwell as the *Barton* doctrine required.

Not true. The bankruptcy court expressly refused to reach the *Barton* doctrine question

because the statute of limitations disposed of CIT's claim. (*See* Maxwell L.R. 7056-1 Stmt. Ex.

---

[14]    The judgment was final despite CIT's subsequent appeals. A pending appeal does
not deprive a final judgment of preclusive effect. *Ross*, 486 F.3d at 284; 18A Wright, Miller &
Cooper, *supra*, § 4433 at 78.

Q at 6) ("[T]he court will not go through the exercise of determining whether CIT has a *prima*

*facie* case [for purposes of *Barton*] because the proceeding is clearly barred by the statute of

limitations."). A judgment that a statute of limitations bars a claim is a judgment on the merits,

*see Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 228 (1995) (declaring that "[t]he rules of

finality . . . treat a dismissal on statute-of-limitations grounds . . . as a judgment on the merits");

*Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173 (3d Cir. 2009); *Smalls*, 471 F.3d at 192;

*Tahoe-Sierra Pres. Council*, 322 F.3d at 1081, and is generally not jurisdictional, *see John R.

Sand & Gravel Co. v. United States*, 552 U.S. 130, 133-34 (2008); *Day v. McDonough*, 547 U.S.

198, 205 (2006).[15/]

Because CIT's adversary proceeding against Maxwell was dismissed on statute of

limitations grounds and the bankruptcy court had "finished with the case," *Czarniecki*, 633 F.3d

at 549 (internal quotation omitted), the judgment was a final judgment on the merits.

### iv. Order of Proceedings

The identical parties, identical claims, and final judgment mean that the dismissal of

CIT's adversary proceeding bars CIT from pursuing its amended administrative expense requests

– and would do so even if the requests had been timely. But although that is the end of the

matter, it may be worth noting that claim preclusion bars the amended requests notwithstanding

the unusual sequence of proceedings here. The classic example of claim preclusion entails a

---

[15/]    The statute of limitations that barred CIT's adversary proceeding was an Illinois
state statute. (Maxwell L.R. 7056-1 Stmt. Ex. Q at 7). Illinois sometimes treats its statutes of
limitations as jurisdictional, but only when the right asserted is one "unknown to the common
law." *Charleston Cmty. Unit Sch. Dist. No. 1 v. Illinois Educ. Labor Relations Bd.*, 203 Ill. App.
3d 619, 623, 561 N.E.2d 331, 333 (4th Dist. 1990). The rights CIT asserted in its adversary
complaint were common law rights.

judgment in a first-filed action barring a plaintiff from proceeding in a second-filed action. *See* 18 Wright, Miller & Cooper, *supra*, § 4404 at 45 (calling this the "simplest" example of claim preclusion). Here, on the other hand, the judgment given preclusive effect was entered in the second-filed action, the adversary proceeding.

But the judgment in the later-filed adversary proceeding bars CIT from proceeding on its amended requests even though the amended requests were filed first, because it is the date of judgment, not the order of filing, that matters. *Id.* ("If two actions are pursued simultaneously the first judgment to be entered is entitled to res judicata effect without regard to the order in which the two were commenced . . . ."); Restatement (Second) of Judgments § 14 (1982). When cases "proceed in parallel, the first to reach judgment controls the other, through claim preclusion (res judicata)." *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 838 (7th Cir. 1999); *see also Carr v. CIGNA Sec., Inc.*, 95 F.3d 544, 546 (7th Cir. 1996); *Unger v. Consolidated Foods Corp.*, 693 F.2d 703, 705 (7th Cir. 1982) ("As between two actions pending at the same time, the first of two judgments has preclusive effect on the second.").

It may seem unfair that this principle means a judgment holding a later action barred under a statute of limitations can preclude an earlier action not barred under the same statute. But fairness, the Supreme Court has said, is achieved by "application of accepted principles of res judicata," not judicial notions of "simple justice." *Federated Dep't Stores*, 452 U.S. at 401. Under those principles, courts "award plaintiffs not the better outcome but the first outcome." *Rogers v. Desiderio*, 58 F.3d 299, 300 (7th Cir. 1995). More than once, a judgment in an untimely second action has been held to bar a timely first action. *See, e.g., Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000); *In re Hansler*, 988 F.2d 35, 36-38 (5th Cir. 1993); *Andes*

*v. Paden, Welch, Martin & Albano, P.C.*, 897 S.W.2d 19, 20-23 (Mo. Ct. App. 1995).

Besides, any unfairness in this case is more apparent than real. It was CIT that decided to employ the unusual tactic of filing an adversary proceeding against Maxwell rather than press its long-pending amended administrative expense requests. It was CIT that chose to gamble on the statute of limitations issue in the adversary proceeding rather than move for a voluntary dismissal without prejudice under Rule 41(a)(2), Fed. R. Civ. P. 41(a)(2) (made applicable by Fed. R. Bankr. P. 7041), when the limitations defense was raised. The judgment barring the amended requests resulted entirely from CIT's strategic decisions. (And, of course, the amended requests were filed after the bar date and so were late in any event.) CIT is the author of its own destruction here.

CIT's amended administrative expense requests are barred under the doctrine of claim preclusion. For this additional reason, Maxwell's motion for summary judgment on the amended requests will be granted.[16]

---

[16]    In *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537 (7th Cir. 2003), the court seemed to hold that a final order in a bankruptcy case has no preclusive effect on later proceedings in the same case before the same judge. *Id.* at 543. If that were the holding, claim preclusion would not apply here either. But *Qualitech* concerned an adversary proceeding attacking an earlier sale order, and the court appeared to conclude that claim preclusion was "inapposite" largely because the beneficiary of the sale had submitted its "own request" for clarification of the sale order, so that "the entire issue" was put before the bankruptcy judge. *Id.* The court in *Qualitech* expressed no intention to depart from the long-standing notion that "normal rules" of preclusion apply in bankruptcy, *Katchen*, 382 U.S. at 334, and the departure would be radical indeed, *see* Christopher Klein, Lawrence Ponoroff & Sarah Borrey, *Principles of Preclusion and Estoppel in Bankruptcy Cases*, 79 Am. Bankr. L.J. 839, 869 (2005) (discussing *Qualitech*). For this reason, perhaps, courts and other authorities have tended to read *Qualitech* narrowly. *See, e.g., In re J.S. II, L.L.C.*, 389 B.R. 570, 585 (Bankr. N.D. Ill. 2008); *In re Kmart Corp.*, 362 B.R. 361, 379 n.19 (Bankr. N.D. Ill. 2007) (acknowledging that *Qualitech* may "cause one to question the application of claim preclusion to a bankruptcy court order in a later contested proceeding before the same bankruptcy judge" but limiting the decision to its facts), *aff'd sub nom. Philip Morris Capital Corp. v. Kmart Corp.*, No. 07 C 1926, 2007 WL 3171316 (N.D. Ill. oct. 24, 2007); 18B Wright, Miller & Cooper, *supra*, § 4470.3 at 74-75 & n.36.5 (2d

### 4. Conclusion

The motion of trustee Andrew J. Maxwell for summary judgment on the amended administrative expense requests of CIT Communications Finance Corporation is granted. Maxwell's supplemental objections to the amended requests are sustained, and the amended requests are disallowed. CIT's cross-motion for summary judgment on the amended requests is denied. CIT's motion to compel payment of its original and amended administrative expense requests is denied as to the amended requests. A separate order will be entered consistent with this opinion.

Dated: April 8, 2011

A. Benjamin Goldgar
United States Bankruptcy Judge

---

ed. Supp. 2010) (calling *Qualitech* "complex" and an example of a "special preclusion rule[ ]").